**COMMUNITY TREATMENT CENTERS, INC., a Michigan non-profit corporation, Plaintiff,**

v.

**CITY OF WESTLAND, a municipal corporation, and City of Westland City Council, Jointly and Severally, Defendants.**

**No. 97–CV–70439–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

June 24, 1997.

Dawn MacAddino, Timothy Stoepke, Detroit, MI, for Plaintiff.

Angelo A. Plakas, Westland, MI, Carol A. Rosati, Farmington Hills, MI, for Defendants.

### OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

ROSEN, District Judge.

### I. INTRODUCTION

In the February 19, 1997 First Amended Complaint in this matter, Community Treatment Centers, Inc. ("CTC") and Public Service Credit Union ("PSCU") allege that when Defendants City of Westland (the "City") and the City of Westland City Council (the "City Council") denied CTC's special land-use Ap-

plication (the "Application") for operating a pre-release center for federal prisoners at 30555 Michigan Avenue, Westland, Michigan (the "Property"), which is currently owned by PSCU, the Michigan and federal constitutions were violated. The Complaint includes the following Counts:

(1) Count I: A Writ of Mandamus seeking, *inter alia,* an Order compelling Defendants to issue all necessary permits for CTC's intended use of the Property and enjoining Defendants from preventing CTC's intended use of the Property;

(2) Count II: CTC alleges that, in denying the Application, Defendants have engaged in "exclusionary zoning" which violates the Michigan Constitution and the Fifth and Fourteenth Amendments of the United States Constitution;

(3) Count III: CTC alleges that this "exclusionary zoning" violates M.C.L.A. § 125.581;

(4) Count IV: Defendants' conduct effected a taking in violation of Article X, Section 2 of the Michigan Constitution and the Fifth and Fourteenth Amendments to the United States Constitution;

(5) Count V: Defendants' conduct has deprived CTC of substantive due process, pursuant to 42 U.S.C.A. § 1983;

(6) Count VI: CTC re-alleges its exclusionary zoning claims, but in this Count alleges them pursuant to 42 U.S.C.A. § 1983;

(7) Count VII: Defendants' conduct has deprived CTC of its right to equal protection under the Fourteenth Amendment to the United States Constitution;

(8) Count VIII: CTC re-alleges its equal protection claim, but in this Count, alleges it pursuant to 42 U.S.C.A. § 1983;

(9) Count IX: CTC alleges that it is immune from the local zoning ordinances relevant to its Application because its use of the Property is pursuant to a contract with the Federal Bureau of Prisons ("BOP"); and

(10) Count X: The local zoning ordinances at issue here are preempted by federal law regarding the operation and establishment of federal penal institutions and correctional facilities.

In Counts II—X, as it did in Count I, CTC requests that the Court order the City to issue all necessary permits and/or enjoin the City from preventing CTC's intended use of the Property. Moreover, in Counts IV, V, VI, and VIII, CTC seeks damages.

This matter is before the Court on Defendants' April 7, 1997 Motion to Dismiss on jurisdictional and abstention grounds. Additionally, the Court ordered the parties to submit supplemental briefs regarding CTC's standing. Having reviewed the parties' pleadings and conducted a hearing on this matter, the Court is now prepared to rule. This Opinion and Order sets forth that ruling.

## II. *FACTUAL BACKGROUND*

### A. *Pre-Release Centers for Federal Offenders.*

The BOP "contracts with state and local governments and private organizations to provide a variety of services to federal offenders in the community. These services are generally provided through facilities commonly known as Community Corrections Centers." (CTC's Motion for Summary Judgment on Counts IX and X (P's MSJ on Counts IX and X), Ex. A). The objective of a Community Correction Center ("CCC") "is to provide a versatile community-based program for federal offenders. Services ... include programs designed to assist offenders in becoming law-abiding, self-sufficient, contributing members of the community." (P's MSJ on Counts IX and X, Ex. A). The services provided by a CCC include the following:

1. Pre-Release Component: Offenders in this program component are in the center for the purpose of making a transition from the institutional setting to the community, or as a program resource while under supervision. These individuals are the responsibility of the BOP.

2. Community Corrections Component: Offenders in this program component are in the center primarily as a puni-

tive sanction. Conditions are more restrictive than the pre-release component. This component may consist of individuals under the responsibility of the BOP (Direct Court Commitments and Institution Transfers) and the Probation Office (Supervision Cases).

3. Home Confinement Component: Offenders in this program component are ordinarily within thirty to sixty days of release. This is a selective status that is authorized discriminantly according to an offender's needs. This component may consist of individuals under the responsibility of the POP and the Probation Office.

(*Id.*).

The authority and procedures for establishing CCC's is found at 18 U.S.C.A. § 4082, and the regulations promulgated thereunder at 28 C.F.R. 0.95 *et seq.* Section 4082 gives the Attorney General the power to designate where federal prisoners shall be committed, including committing them to residential community treatment centers. 18 U.S.C.A. § 4082(b) and (f). In 28 C.F.R. § 0.95, the Attorney General delegates this authority to the BOP.

On February 6, 1995, the BOP issued a Request for Proposal ("RFP") which solicited proposals to provide CCC services in the Detroit metropolitan area for 35 male Federal offenders held under the authority of the statutes of the United States. (P's MSJ on Counts IX and X, Ex. A; CTC's First Amended Complaint ("Complaint"), Ex. 2). During April 1995, Project Rehab, Inc., a non-profit Michigan corporation of which CTC is allegedly a wholly-owned subsidiary, submitted a proposal pursuant to this RFP. (P's MSJ on Counts IX and X, Ex. A.) In April 1996, CTC and/or Project Rehab identified the Property as a location for the CCC services facility (the "Facility") in Metro Detroit. (P's MSJ on Counts IX and X, Ex. B., Humes Affidavit, p. 2). By August 1996, the BOP approved of the Property as a site for the Facility and awarded a contract to Project Rehab, Inc.[1] (P's MSJ on Counts IX and X, Ex. A.). Allegedly, under the terms of the

contract, CTC was to be in operation of the Facility by May 1, 1997, (P's MSJ on Counts IX and X, Ex. B., p. 2), although CTC advised the Court that the BOP extended this date to May 31, 1997 in light of the Court's hearing on this matter.

### B. *Zoning in the City of Westland.*

Under Michigan's Zoning Enabling Act, M.C.L.A. § 125.581 *et seq.*, cities and villages may create and implement their own zoning policies and procedures subject to a wide variety of factors and considerations. Pursuant to its own zoning ordinance, the City has divided itself into different Zoning Districts which each have several uses that are permitted as of right, as well as "special land-uses," the applicability and approval of which are governed by Article XIII of the Ordinance. Westland, Mich., Zoning Ordinance (hereinafter "Zoning Ordinance"), Arts. VI and IX. OB–1 and OB–2 are two of these Zoning Districts. Zoning Ordinance, Art. IX.

The Zoning Ordinance provides that if a use is not a use as of right, the owner may obtain a special land-use permit by filing an application with the City's Planning Department. Zoning Ordinance, Art. XIII. Thereafter, the City's Planning Director prepares a report regarding the application and makes a recommendation. *Id.* Upon completion of the report, the Planning Director forwards the report to the City's Planning Commission. *Id.* After giving notice of and conducting a public meeting on the application, the Planning Commission makes a recommendation to the City Council. Zoning Ordinance, Art. XIII. Thereafter, the City Council makes the final determination on the application based upon the requirements and standards of the Zoning Ordinance. *Id.*

### C. *The Application Process.*

On April 25, 1996, CTC contacted Mr. Todd Kilroy, Planning Director of the City, and inquired about operating the Facility in Zoning District OB–2, High–Intensity Office Business District. (CTC's First Amended

---

**1.** CTC alleges that Project Rehab's rights under this contract have been assigned to CTC. Neither the contract nor the assignment has been provided to the Court.

Complaint ("Complaint"), Ex. 1, p. 1). On June 19, 1996, CTC made a $5,000 deposit on a $300,000 contingent purchase agreement for the Property with PSCU. (CTC's supplemental Brief on Standing ("CTC's Supplement"), Ex. 1).

In its pleadings, CTC alleges that it selected the Property as the site for the Facility for several reasons. First, because the Property is on Michigan Avenue between Merriman Road and Henry Ruff Road in Westland, MI, the Property is near major thoroughfares which is important for the transportation needs of the Facility's residents. (CTC's Motion for Summary Judgment on Count I ("P's MSJ on Count I"), p. 1). Second, the site has parking and is adaptable to the residential and counseling needs of the Facility. (*Id.*). Finally, the area immediately surrounding the site is predominantly vacant, while the more general vicinity includes businesses, shopping centers, and other light industrial uses—i.e., there is no adjacent residential area. (*Id.* at p. 1–2).

On June 24, 1996, various City officials and departments and CTC conducted a "study session" of the Property as the location for the Facility, apparently incident to the Planning Director's report under Article XIII of the Zoning Ordinance. (P's MSJ on Count I, Ex. A). At this time, the City requested that the Police Department investigate similar facilities operated by CTC in Saginaw, Detroit, and Grand Rapids, MI. (P's MSJ on Count I, Ex. B).

On July 1, 1996, Police Chief Emery Price forwarded the Police Department's report to the City's Mayor, Robert J. Thomas. (*Id.*). Generally, the report found that these other locations were "good neighbors" and did not present problems for the communities in which they were located. Thereafter, on July 23, 1996, CTC alleges that Mr. Kilroy and Mr. Madden, the City Attorney, advised CTC that the Property was zoned OB–1, Low–Intensity Office Business District, and that the Facility was a special land-use which could be permitted on the Property subject to the Zoning Ordinance regarding special land-uses. (P's MSJ on Count I, p. 4).

On September 5, 1996, CTC and PSCU signed an extension agreement to the original purchase agreement which gave the parties additional time to fulfill the conditions of the purchase agreement. This extension states that:

> The closing date as specified in the Purchase Agreement shall be revised so that the closing shall take place on the later of November 23, 1996 or 90 days from receipt of notice of intent to take occupancy, provided, that all conditions set forth in the Purchase Agreement and in this Agreement have been met.

(CTC's Supplement, Ex. 2).

On September 6, 1996, CTC submitted a special land-use Application for the Property which was endorsed by PSCU. (Complaint, Ex. 2). From September 9, 1996 through September 12, 1996, the City's planning, police, fire, and engineering departments conducted a preliminary site plan and special land-use review. (Complaint, Ex. 3). After each of these departments submitted comments, CTC allegedly modified its site plan accordingly and re-submitted it. (Complaint, p. 4).

On September 16, 1996, PSCU [2] contacted Wayne County about selling the Property to CTC because, pursuant to a quit claim deed, Wayne County holds a Right of First Refusal on the Property. (CTC's Supplement, Ex. 3). Moreover, PSCU inquired about purchasing from Wayne County a parcel adjacent to the Property because the driveway that services the Property is on this adjacent parcel. (*Id.*, Ex. 4). Thus, in a letter to Dewitt J. Henry, Assistant Wayne County Executive and Director of Economic Development, PSCU requested that Wayne County enter into negotiations with it about its Right of First Refusal and the adjacent parcel. (CTC's Supplement, Ex. 4).

On October 1, 1996, Mr. Kilroy issued a statement of findings and recommendations to the City's Planning Commission which rec-

---

**2.** PSCU was formerly known as the Wayne County Employees Credit Union. (CTC's Supplement, Ex. 4).

ommended approval of the Application. (Complaint, Ex. 4). *On this same date, the* Planning Commission conducted a public hearing on the Application. (P's MSJ on Count I, Ex. H). During the hearing, the Planning Commission requested that CTC provide it with some additional information, including the Police Department's review of the Application. (*Id.*). On October 21, 1996, CTC submitted its responses to the Planning Commission's requests. (Complaint, Ex. 6). On October 22, 1996, the Planning Commission conducted another hearing on the Application. (P's MSJ on Count I, Ex. L, p. 10). After hearing and considering the evidence, the Planning Commission voted 7 to 1 to recommend that the City Council approve the Application. (*Id.*; Defendants' Reply regarding D's MPSJ, Defendants' Answers to Requests for Admission and CTC's First Set of Interrogatories, p. 7).

On October 30, 1996, PSCU again contacted Wayne County. At this time, PSCU sought: (1) A waiver from Wayne County of its Right of First Refusal; and (2) Either a re-affirmation of a right of way easement to CTC for use of the driveway on the adjacent parcel or a sale of the parcel itself. (D's MPSJ, Ex. D).

A public hearing on the Application before the City Council was scheduled for November 18, 1996. (P's MSJ on Count I, Ex. K, p. 2). However, at this hearing the City Council tabled the Application until December 16, 1996 in order to obtain a legal opinion from the City Attorney, apparently without disclosing the nature of the inquiry. (*Id.*). On December 16, 1996, the City Council conducted another hearing on the Application during which members of the City Council stated that the City Attorney, Keith Madden, had advised the City Council that the Facility was not a special land-use specifically provided for in the OB–1 Zoning District. (P's MSJ on Count I, Ex. L, p. 15). On this basis, the City Council denied the Application. (P's MSJ on Count I, Ex. M). CTC has subsequently challenged the City Council's decision in the Wayne County Circuit Court, the Michigan Court of Appeals, and in this Court.

On March 14, 1997, Wayne County offered to re-purchase the Property from PSCU pursuant to its Right of First Refusal under the Quit Claim Deed. (D'S MPSJ, Ex. A). Specifically, Wayne County has offered PSCU $300,000 for the Property, subject to: (1) Approval by the Wayne County Board of Commissioners; (2) Compliance with all the City of Westland's codes and ordinances; (3) Identification of potential environmental mitigation costs; and (4) Approvals from the City of Westland and the City of Inkster regarding the water supply. (*Id.*).

## III. *PROCEDURAL HISTORY*

On January 3, 1997, CTC and PSCU appealed the City Council's decision to the Wayne County Circuit Court. On appeal, they argued that: (1) The City Council lacked authority under the Zoning Ordinance to interpret CTC's use of the Property and to deny the Application on the basis that it was not a special land-use specifically provided for in the OB–1 Zoning District; (2) The City Council erred in denying CTC's Application for special land-use approval in the absence of competent, material, and substantial evidence on the record which satisfied the requirements of the Zoning Ordinance; (3) The City Council's denial of CTC's application was arbitrary and capricious and a denial of due process; and (4) The City Council's denial of CTC's application violated substantive due process under the Fifth Amendment to the United States Constitution and under the Michigan Constitution. (D's MPSJ, Ex. D). Moreover, in a supplemental brief, CTC and PSCU argued that the City Council was estopped from denying that CTC's use was a special land-use permitted in the OB–1 Zoning District due to the prior representations of City officials. (*Id.*).

On February 4, 1997, CTC and PSCU filed a complaint in this Court which they amended in their First Amended Complaint on February 19, 1997. Thereafter, on March 4, 1997, CTC moved for Summary Judgment on its immunity and preemption claims, Counts IX and X, respectively, of the First Amended Complaint. On March 14, 1997, CTC and PSCU also moved for Summary Judgment on Count I, the Writ of Mandamus. There-

after, Defendants moved to dismiss this case on jurisdictional and abstention grounds and cross-moved for Summary Judgment on Counts IX, X, and I.

In the meantime, on April 28, 1997, Judge Claudia House Morcom of the Wayne County Circuit Court ruled on CTC and PSCU's Appeal finding that: (1) The City Council had the authority to interpret the Zoning Ordinance to determine whether CTC's proposed use was included in those uses designated as special land-uses in the OB–1 Zoning District; (2) The City Council was authorized to reject CTC's Application on the basis that the proposed use was not a special land-use in an OB–1 Zoning District; (3) The City Council's denial of CTC's Application was supported by competent material and substantial evidence and was not an abuse of discretion, nor a denial of due process; (4) The City has not violated CTC's right to substantive due process because CTC has not exhausted its administrative remedies under Article IV of the Zoning Ordinance, pursuant to which CTC may obtain a determination of whether the Facility is permitted in Zoning District OB–1 or elsewhere within the City; and (5) There is no basis for estopping the City Council from denying CTC's Application. *Community Treatment Centers and Public Service Credit Union v. City of Westland,* No. 97–700188–AA, slip. op. (Wayne County Circuit Court, April 28, 1997) (unpublished) (hereinafter "*CTC*").

On May 15, 1997, the Court, upon reviewing the pleadings, ordered the parties to submit supplemental briefs regarding CTC's and PSCU's standing to bring this case.[3] In its supplemental brief, CTC has advised the Court that PSCU will withdraw from this action due to the competing interests of Wayne County and CTC in the Property. (CTC's Supplement, p. 1). Moreover, Defendants have advised the Court that CTC has now filed an Application for Leave to Appeal,

in which PSCU has not joined, from the decision of the Wayne County Circuit Court.[4] (Defendants' Supplemental Brief on Standing ("Defendants' Supplement"), p. 9).

## IV. ANALYSIS

### A. The Applicable Standards for Motions to Dismiss.

Defendants have moved to Dismiss the case under Fed.R.Civ.P. 12(b)(1) and 12(b)(6). There are two types of challenges to jurisdiction which may be made under Fed.R.Civ.P. 12(b)(1): (1) a facial attack that challenges the sufficiency of the allegations of jurisdiction in the pleadings on their face; and (2) a factual attack that challenges the truth of the jurisdictional facts alleged in the pleadings. *See, e.g., United States v. Ritchie,* 15 F.3d 592, 598, (6th Cir.), *cert. denied,* 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994). When reviewing a motion raising a facial attack, the court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inference in the plaintiff's favor. *See, e.g., Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir.1995). This standard is similar to that applied in a motion to dismiss under Fed.R.Civ.P. 12(b)(6). When reviewing a factual attack, no presumptive truthfulness applies to the factual allegations and the court is free to weigh the evidence and satisfy itself as the existence of its power to hear the case. *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990). But the fact that the court takes evidence for the purpose of deciding the jurisdictional issue does not mean that factual findings are therefore binding in future proceedings. *See Id.; See also, Shaw v. Merritt–Chapman & Scott Corp.,* 554 F.2d 786, 789 (6th Cir.), *cert. denied,* 434 U.S. 852, 98 S.Ct. 167, 54 L.Ed.2d 122 (1977).

In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the Court is required to accept the

---

3. At the March 26, 1996 Scheduling Conference in this matter the parties failed to inform the Court of Wayne County's Right of First Refusal and that Wayne County had expressed an interest in exercising it. Consequently, the Court only learned of this situation in the course of preparing for the hearing on this matter at which time

it immediately ordered the supplemental briefing.

4. At the hearing on this matter, CTC confirmed that it had filed a Notice of Appeal to the Michigan Court of Appeals.

well-pleaded factual allegations set forth in the plaintiff's complaint as true. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). However, the Court need not accept as true any legal conclusions or unwarranted factual inferences. *Morgan, supra; Westlake, supra. See also, Blackburn v. Fisk University,* 443 F.2d 121, 124 (6th Cir.1971) (the court is "required to accept only well-pleaded facts as true, not the legal conclusions that may be alleged or that may be drawn from the pleaded facts").

### B. *Standing and Ripeness.*

After reviewing the parties' pleadings, the Court ordered the parties to submit supplemental briefs which addressed standing. In particular, since Wayne County has a Right of First Refusal and is interested in exercising that Right, there appears to be a question regarding whether this matter is one that the Court should entertain under Article III of the United States Constitution. Moreover, because Judge Morcom found that CTC has not exhausted its administrative remedies, many of CTC's claims may not be ripe for judicial decision. In their supplemental brief, Defendants have essentially argued that CTC lacks standing for two reasons: (1) CTC lacks a sufficient interest in the Property; and (2) Even if CTC has a sufficient interest in the Property, there is no redressable injury in fact because ultimately Wayne County's exercise of its Right of First Refusal will prevent CTC from obtaining the Property and completing its BOP contract.

#### 1. *Standing.*

A plaintiff's standing is a jurisdictional matter for Article III courts, and thus, is a threshold question to be resolved before the court may address any substantive issues. *Linda R.S. v. Richard D.,* 410 U.S. 614, 615, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973); *O'Shea v. Littleton,* 414 U.S. 488, 493, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); *Planned Parenthood Ass'n v. City of Cincinnati,* 822 F.2d 1390, 1394 (6th Cir.1987).

Article III, section 2 of the United States Constitution confines federal court jurisdiction to "cases" and "controversies". The case-or-controversy requirements of Article III, however, are not satisfied merely because a party requests a court of the United States to declare his legal rights. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). As the Supreme Court explained in *Valley Forge:*

> The judicial power of the United States defined by Art. III is not an unconditioned authority to determine the constitutionality of legislative or executive acts. The power to declare the rights of individuals and to measure the authority of governments, this Court said 90 years ago, "is legitimate only in the last resort, and as a necessity in the determination of real, earnest, and vital controversy." Otherwise the power "is not judicial ... in the sense in which judicial power is granted by the Constitution to the courts of the United States."

> As an incident to the elaboration of this bedrock requirement, this Court has always required that a litigant have "standing" to challenge the action sought to be adjudicated in the lawsuit.

*Id.*

Thus, in order to invoke a federal court's jurisdiction, the Supreme Court has held that a party must demonstrate:

> (1) "injury in fact," by which we mean an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;"

> (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court;" and

> (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the "prospect of obtaining relief from the injury as a result of a favorable ruling" is not "too speculative."

*Northeastern Florida Contractors v. Jacksonville,* 508 U.S. 656, 663–64, 113 S.Ct. 2297, 2302, 124 L.Ed.2d 586 (1993) (citations omitted).

### a. *Legally Protected Interest.*

Defendants contend that CTC does not have a legally protected interest in this matter because: (1) no executed and/or enforceable purchase agreement between CTC and PSCU exists; and (2) even if one were to exist, it would be insufficient for the purposes of standing. CTC, however, has provided the Court with a June 19, 1996 purchase agreement and a September 9, 1996 extension agreement which extends the closing date in the purchase agreement until the later of November 23, 1996 or 90 days from the date when CTC provides PSCU with a notice of intent to take occupancy. (CTC's Supplement, Ex. 2). Although November 23, 1996 has passed, CTC has not provided PSCU with a notice of intent to take occupancy. Thus, the Court finds that CTC does have an interest in the Property to the extent that the purchase agreement and the extension agreement create one. Whether this interest is sufficient for standing purposes is a matter to which the Court will now turn.

The purchase agreement and the extension agreement between PSCU and CTC provide that CTC has the option to purchase the Property for $300,000 for a limited period of time contingent upon several factors, including a waiver of Wayne County's Right of First Refusal and CTC's giving notice of an intent to occupy. Defendants argue that CTC's contingent expectancy interest in the Property does not give it a sufficient interest for the purposes of standing.

This case revolves around the decision that the City Council made with respect to its Application for a special land-use permit on the Property. CTC filed this Application jointly with the owner of the Property, PSCU, who has now withdrawn from this case. Therefore, the question is whether

CTC's interest in the Application, which is now founded solely on its contingent expectation interest in the Property, gives CTC an interest which is legally protected for the purposes of standing.

 In *Carleton Sportsman's Club v. Exeter Township,* 217. Mich.App. 195, 550 N.W.2d 867, 870 (1996), the Michigan Court of Appeals held that "where a zoning ordinance does not provide an aggrieved party the right to have an unfavorable decision of a township board regarding a request for [a] special land-use permit reviewed by a zoning board of appeals, appellate review is available to the *aggrieved party* in the circuit court." (*Emphasis* added). In these circumstances, an "aggrieved party" is one who would have a right to appeal the decision under M.C.L.A. § 125.293a. In order to be "aggrieved" under § 125.293a, a party must "allege and prove that he [or she] has suffered some special damages not common to *other property owners* similarly situated." *Unger v. Forest Home Township,* 65 Mich.App. 614, 237 N.W.2d 582, 584 (1975) (*emphasis* added). Thus, because Michigan law recognizes the rights and interests of "aggrieved parties" in zoning disputes, CTC has a legally protected interest in this matter to the extent that it is an "aggrieved party."

As discussed above, CTC only has a contingent expectancy interest in the Property, and PSCU, the owner of the Property, is withdrawing from this case. Thus, it appears that CTC cannot be an aggrieved party because it is not a property owner. CTC, however, refers the Court to a line of cases which indicates that persons who hold options on property have standing to attack zoning ordinances and zoning decisions which deny them building and use permits for that property. *See, Sun Oil Company v. City of Ferndale,* 149 N.W.2d 485, 486, 6 Mich.App. 470, 472–73 (1967); *Haven v. City of Troy,* 197 N.W.2d 496, 500, 39 Mich.App. 219, 226 (1972).[5] Therefore, CTC concludes that by

---

**5.** To the extent Defendants cite authority to the contrary, that authority relates to statute of frauds questions or questions about ownership of land which the Court finds irrelevant to the instant matter. *See Windiate v. Leland,* 246 Mich. 659, 225 N.W. 620 (1929); *Hague v. DeLong,* 292 Mich. 262, 290 N.W. 403 (1940); *Gustin v. The Union School District of Bay City,* 94 Mich. 502, 54 N.W. 156 (1893); *Cameron v. Shumway,* 149 Mich. 634, 640–41, 113 N.W. 287, 290 (1907); *Township of Oshtemo v. City of Kalamazoo,* 77 Mich.App. 33, 257 N.W.2d 260 (1977).

virtue of its Application and its contractual interest in the Property, it is an aggrieved party, and therefore, has a legally protected interest.

The cases upon which CTC relies, however, are distinguishable from this case because CTC's option to purchase is contingent not only upon its notice of intent to occupy, but also upon Wayne County's waiver of its Right of First Refusal. As a result, it is not clear to the Court that CTC has a sufficient interest and there is a dearth of case law on such factual nuances. Nevertheless, under Michigan law, CTC had the ability to apply for a special land-use permit and, incident to that process, CTC claims state actors violated its constitutional rights. Therefore, the Court will assume that CTC has a legally protected interest to assert in this case.

#### b. *Injury in Fact.*

Defendants also argue that CTC lacks standing in this case because it cannot show any redressable injury in fact—namely that regardless of the Court's decision here, CTC will lose its BOP contract or be delayed in its performance of the contract because of Wayne County's exercise of its Right of First Refusal. CTC counters that its injury here is the denial of the Application itself and the associated violations of its constitutional rights. As many commentators have observed, the resolution of a standing question often depends on how the court characterizes the alleged injury. *See, e.g.,* E. Chemerinsky, *Federal Jurisdiction* § 2.3, at 77 (2d ed.1994); 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3531.2, at 401, § 3531.4 at 173 (1994 Supp). Consequently, many standing decisions seem irreconcilable. *Cf. Linda R.S., supra,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) (Plaintiff challenging a child support statute on equal protection grounds lacked standing because she could not show that she would receive money from the father even if the Court ruled in her favor) *with Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979) (Plaintiff challenging an alimony law had standing because the Court found that the injury was not lack of alimony, but rather, a denial of equal protection).

In the instant matter, therefore, it is important that in examining CTC's standing, the Court carefully consider what CTC's injury is—a violation of its constitutional rights or the delay in performing (or, potentially, the loss of) its BOP contract. In making this determination, the Court is guided by *Northeastern Florida Contractors, supra,* 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (hereinafter "*NFC*"), the most recent Supreme Court decision concerning standing and the characterization of a plaintiff's injury.

In *NFC,* an association of general contractors brought an action against the City of Jacksonville challenging an ordinance which accorded preferential treatment to certain minority-owned businesses in the award of city contracts. After the District Court granted summary judgment in favor of the association, the city appealed. On appeal, the Eleventh Circuit held that the association lacked standing to challenge the ordinance because the association "has not demonstrated that, but for the program, any ... member [of the association] would have bid successfully for any of these contracts." *Northeastern Florida Chapter v. Jacksonville,* 951 F.2d 1217, 1218–19 (11th Cir.1992). Essentially, therefore, the Court of Appeals concluded that under these circumstances

---

Additionally, Defendants rely heavily on the following passage from *Selective Group, Inc. v. City of Farmington Hills,* 180 Mich.App. 595, 603–04, 447 N.W.2d 817, 821 (1989):

> We do not look with favor upon the practice of permitting a plaintiff to possess standing to contest the validity of a zoning ordinance as applied to real property in which a plaintiff's sole interest is a preliminary sales agreement conditioned upon rezoning.

However, this quote is immediately followed by this language:

> In the within case, however, we need not rest our result upon that proposition because we believe the trial court's decision on the merits should be affirmed.

*Id.* Moreover, the instant matter is distinguishable in that CTC's purchase agreement is not contingent upon rezoning. Application and its contractual interest in the Property, it is an aggrieved party, and therefore, has a legally protected interest.

there is no redressable injury for Article III purposes. *Id.* at 1219–20.

■ In reversing the Court of Appeals, the Supreme Court found that the association had standing. Here, the Court reasoned that for standing purposes, the association's injury was not its members' failure to obtain the benefits of being awarded a contract, but rather, the violation of their constitutional rights which occurred incident to applying for the contracts. *NFC,* 508 U.S. at 665–69, 113 S.Ct. at 2303–04. By analogy, therefore, the Court finds that CTC's injury for the purposes of this case is not the delay or loss of its BOP contract, but instead, is the violation of its constitutional rights which the City Council allegedly inflicted when it denied the Application.

The Court's conclusion here is also supported by the *NFC* Court's discussion of a prior standing case, *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In *Warth,* several plaintiffs and intervenors challenged local zoning ordinances which they alleged prevented low income persons and members of racial and ethnic minorities from obtaining housing in the Town of Penfield, N.Y. One of the intervenors was an association of construction firms which alleged that the exclusionary zoning restrictions had deprived some of its members of business opportunities and profits. In finding that these intervenors lacked standing, the Court stated:

> The complaint refers to no specific project ... [and] [t]here is no averment that any member has applied ... for a building permit or variance with respect to any current project .... In short, insofar as the complaint seeks prospective relief, [the association] has failed to show the existence of any injury to its members of sufficient immediacy and ripeness to warrant judicial intervention.

*Warth, supra,* 422 U.S. at 516, 95 S.Ct. at 2214. When the *NFC* Court discussed *Warth,* however, it noted that if the association there had applied for a building permit or a variance, this "would certainly have been

sufficient to establish standing...." *NFC,* 508 U.S. at 668, 113 S.Ct. at 2304. Therefore, reading together *Warth* and *NFC,* the Court finds that even though Wayne County's Right of First Refusal may prevent CTC from obtaining the Property and building the Facility, CTC has, for the purposes of Article III, alleged a sufficient injury in fact—the deprivation of its constitutional rights.[6]

**2. *Ripeness.***

■ A related concern, but one that is analytically separate from standing, is the doctrine of ripeness. Ripeness is a mixture of Article III concerns about actual cases or controversies and prudential concerns about the appropriate time for a court to make a decision. *Cf. Public Serv. Comm'n. of Ut. v. Wycoff Co.,* 344 U.S. 237, 242–45, 73 S.Ct. 236, 239–41, 97 L.Ed. 291 (1952) (ripeness is a constitutional concern) *with Buckley v. Valeo,* 424 U.S. 1, 114–18, 96 S.Ct. 612, 680–82, 46 L.Ed.2d 659 (1976) (ripeness is a prudential concern). When determining whether a case is ripe, a court should look primarily to two considerations: (1) "the fitness of the issues for judicial decision;" and (2) "the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Essentially, "the basic rationale [for the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* at 148, 87 S.Ct. at 1515. Ripeness is of particular importance when a party brings a suit alleging that the application of a statute has effected a taking and denied the party equal protection and substantive due process. CTC has raised these claims, respectively, in Counts IV, VII, VIII, and V of its Complaint.

**a. *Takings Claims.***

■ For ripeness purposes, an as-applied takings challenge (i.e., a claim that as applied to a particular property a statute effects an uncompensated taking) involves two independent prerequisites:

---

**6.** Obviously, however, Wayne County's Right of First Refusal may significantly limit, if not eliminate, the damages that CTC can claim.

(1) Since a court cannot determine whether a taking has occurred unless the extent of permissible development is clear, a plaintiff alleging an as-applied taking must show that it has obtained "a final and authoritative determination of the type and intensity of development legally permitted on the subject property," *MacDonald, Sommer & Frates v. County of Yolo,* 477 U.S. 340, 348, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986); and

(2) Since the Constitution does not prohibit takings, but only takings without just compensation, "if a State provides an adequate procedure for seeking just compensation," a plaintiff may not bring as-applied claims to federal court until they have "used the procedure and been denied just compensation." *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 195, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985).

In the instant matter, it appears that CTC does not meet either of these prerequisites.

First, as Judge Morcom held, CTC has failed to seek a determination under Article IV, § 4.9 of the Zoning Ordinance as to whether the Facility is a permissible use in the OB–1 Zoning District or where in the City, in addition to or in lieu of OB–1, the Facility may be located. *CTC* at p. 14. The City Council simply determined that the Facility was not among those uses expressly designated in OB–1, leaving open the possibility that the Facility could be another permissible use within the OB–1 District or that CTC could obtain some type of waiver or variance from the Planning Commission and/or the Zoning Board of Appeals. *Id.* These circumstances, therefore, prevent CTC from claiming that its unsuccessful Application is sufficient to meet this first prerequisite because:

> [T]hose who have not followed available routes of appeal cannot claim to have obtained a 'final' decision, particularly if they have foregone an opportunity to bring their proposal before a decisionmaking

body with broad authority to grant different forms of relief or to make policy decisions which might abate the alleged taking.

*Southern Pacific Transportation Co. v. City of Los Angeles,* 922 F.2d 498, 503 (9th Cir. 1990); *See also, MacDonald, supra,* 477 U.S. at 350, 106 S.Ct. at 2566 ("The local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take away with the one hand they may give back with the other").[7] Additionally, the denial of the Application is not final as it remains on appeal.[8]

With respect to the second prerequisite, CTC has not alleged that it has pursued any State remedies for compensation or alleged that these remedies are inadequate or non-existent. Thus, the Court finds that CTC has not met either of the prerequisites for bringing a takings claim.

**b.** ***Equal Protection and Substantive Due Process.***

 In addition to its takings claim, CTC alleges that its right to substantive due process and equal protection were violated by the City Council's actions. "All as-applied challenges to regulatory takings, whether based on the just compensation clause, the due process clause, or the equal protection clause, possess the same ripeness requirement: a final determination by the relevant governmental body." *Southern Pacific Transportation Co. v. City of Los Angeles,* 922 F.2d 498, 507 (9th Cir.1990); *See also, Pennell v. City of San Jose,* 485 U.S. 1, 11 n. 5, 108 S.Ct. 849, 857 n. 5, 99 L.Ed.2d 1 (1988) and *Seguin v. City of Sterling Heights,* 968 F.2d 584, 588 (6th Cir.1992). As the Court discussed above, CTC has simply failed to meet this requirement because there are other procedures available to them before the Zoning Board of Appeals and/or the Planning Commission under Article IV, § 4.9 of the Zoning Ordinance. *Williamson County Regional Planning Comm'n, supra,* 473 U.S. at

---

**7.** This rationale also prevents CTC from invoking the futility exception to the exhaustion of administrative remedies requirement because the City Council's disposition of its Application did not indicate that the Facility could not ultimately be approved per Article IV of the Zoning Ordinance.

**8.** *See* immediate discussion, *infra.*

187, 105 S.Ct. at 3117 (where landowner failed to seek variances which could have allowed development his taking claim was not ripe because there remained the "potential for ... administrative solutions"); *Southern Pacific Transportation Co., supra,* 922 F.2d at 503; *Hoehne v. County of San Benito,* 870 F.2d 529, 531 (9th Cir.1989). Moreover, with regard to CTC's Application itself, no final decision has been made to the extent that the City Council's disposition of the Application is currently on appeal to the Michigan Court of Appeals. Indeed, this circumstance flies in the face of the ripeness doctrine because until this appeal is resolved, the Zoning Ordinance will not actually be applied to the Property and the Court will be entangling itself in hypothetical constitutional claims since the Michigan Court of Appeals may rule in CTC's favor. *See, Abbott Laboratories, supra,* 387 U.S. at 148, 87 S.Ct. at 1515; *See also, Remus Joint Venture v. McAnally,* No. 95–70343, slip op. at 11–12 (E.D.Mich. October 11, 1995) (Cook, C.J.) (unpublished) (no final decision for purposes of applying ripeness doctrine to equal protection and substantive due process claims where pending state court litigation may resolve the validity of the zoning ordinance in the plaintiff's favor).

#### c. *Hardship.*

■ Having found that CTC's claims in Counts IV, VI, VII, and VIII are not fit for judicial decision by this Court, the Court turns to whether withholding a decision in this matter will subject the parties to a hardship. Ripeness doctrine has recognized three such hardships:

(1) Hardship from choice between possibly unnecessary compliance and possible criminal conviction. *Abbott Laboratories, supra,* 387 U.S. at 152–53, 87 S.Ct. at 1517–18;

(2) Hardship where the application of a law is inevitable and adverse consequences attach to it. *Blanchette v. Connecticut General Insurance Corps.,* 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974).

(3) Hardship because of uncompensable collateral injuries. *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) (Incident to a challenge to the construction and operation of a nuclear reactor, the possibility of nuclear radiation and contamination and inadequate compensation from Congress for these potential injuries were uncompensable collateral injuries which made the matter ripe).

The Court finds that none of these hardships exist in this case.

First, CTC is not facing a choice between a criminal conviction and unnecessary compliance because CTC has yet to acquire the Property, let alone operate the Facility on it. Second, for similar reasons, enforcement of the Zoning Ordinance is not certain, as the denial of CTC's Application is on appeal to the Michigan Court of Appeals; CTC has not acquired the Property; and CTC is not in operation of the Facility. Finally, CTC does not face uncompensable collateral injuries of a magnitude that is comparable to those faced in *Duke Power Co., supra.* Moreover, any collateral injuries here are of CTC's own making. CTC knew at the outset what the deadlines were for its BOP contract and CTC alone is responsible for failing to account for Wayne County's Right of First Refusal and for potential problems with its Application. Accordingly, the Court finds that CTC's claims in Counts IV, V, VII[9], and VIII are not ripe for adjudication.[10]

#### C. *The Rooker–Feldman Doctrine.*

---

**9.** In addition to equal protection claims, CTC alleges claims of exclusionary zoning in Counts II, III, and VI. It is not clear to the Court how these claims differ from CTC's equal protection and substantive due process claims, and therefore, it seems likely that CTC's exclusionary zoning claims are also not ripe.

**10.** Although exhaustion of state remedies is ordinarily not required for 42 U.S.C.A. § 1983 actions, the Supreme Court has held that "the

question of whether administrative remedies must be exhausted is conceptually distinct ... from the question of whether an administrative action must be final before it is judicially reviewable," and that ripeness claims may be predicated on obtaining a final determination regarding permitted uses. *Williamson County Regional Planning Comm'n, supra,* 473 U.S. at 192–93, 105 S.Ct. at 3119–20.

Beyond standing concerns [11], Defendants have filed a Motion to Dismiss, arguing, *inter alia*, that the Court lacks jurisdiction over this case under the United States Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), and their progeny. Specifically, Defendants contend that because CTC's claims, and/or those issues inextricably intertwined therewith, were decided by Judge Morcom in her Opinion and Order regarding CTC's appeal of the City Council's denial of the Application, the Court lacks jurisdiction over this matter. In response, CTC argues that the *Rooker–Feldman* Doctrine does not apply here because the appeal to the Wayne County Circuit Court is limited to the record and issues before the City Council which do not include, and could not have included, the matters of constitutional law, preemption, and immunity that CTC has put in issue in this case. Because this issue is jurisdictional in nature, it is a threshold matter for the Court.

The Supreme Court's decisions in *Rooker*, *supra*, 263 U.S. at 414, 44 S.Ct. at 149, and *Feldman*, *supra*, 460 U.S. 462, 103 S.Ct. 1303, taken together, stand for the proposition that the inferior federal courts lack the authority to perform, in effect, an appellate review of state court decisions. This now well-settled rule has become known as the *Rooker–Feldman* Doctrine.

In *Rooker*, the plaintiffs brought an action in a federal district court claiming that an Indiana state statute violated their federal constitutional rights, even though the issues which the plaintiffs raised had been decided by an Indiana Circuit Court and affirmed by the Indiana Supreme Court. In affirming the federal district court's dismissal of the action based on lack of jurisdiction, the United States Supreme Court stated that the state courts had jurisdiction to determine the constitutional validity of the state's statutes and, until reversed or modified by a state court, the state judgment would be an effec-

tive and conclusive adjudication, even before an inferior federal court. 263 U.S. at 415, 44 S.Ct. at 150. In particular, the Court held that the inferior federal courts lacked jurisdiction to entertain a proceeding to reverse or modify a state court judgment since it would be an exercise of appellate jurisdiction and the jurisdiction possessed by the federal district court is strictly original. *Id.* at 414–17, 44 S.Ct. at 149–51.

In *Feldman*, the plaintiff submitted to the District of Columbia Court of Appeals a petition for admission to the bar of the District of Columbia after he had been refused the right to take the bar examination because he had not graduated from an approved law school, as required by the District of Columbia rules. After the District of Columbia Court of Appeals denied the plaintiff's petition, he brought an action in a federal district court alleging that he had a right to take the bar exam pursuant to the Fifth Amendment, and that, denying him this right, due to his law school's lack of accreditation, was a violation of the Fifth Amendment and the Sherman Act. In finding that the federal district court had no jurisdiction over this matter, the U.S. Supreme Court held that plaintiffs seeking review of state court decisions must first exhaust the appellate review available to them at the state court level and then, they may appeal only to the United States Supreme Court. *Feldman*, 460 U.S. at 486, 103 S.Ct. at 1316–17.

Since these decisions, the U.S. Courts of Appeal and the U.S. Supreme Court have stated broadly that when presented with claims that raise issues which were the subject of, or inextricably intertwined with, state court decisions, the inferior federal courts must apply the *Rooker–Feldman* Doctrine and dismiss the claims, even where the inextricably intertwined issues underlying the claims before it were not raised in state court, or where the time for appeal in the state court system has expired. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987) (Marshall, J. concurring); *Garry v. Geils*, 82 F.3d 1362,

---

**11.** Although the Court has found that several of CTC's claims are not ripe, the Court will entertain and decide Defendant's Motion to Dismiss on jurisdictional and abstention grounds because in making these decisions the Court will not reach the merits of the case.

1369–70 (7th Cir.1996); *Keene Corp. v. Cass,* 908 F.2d 293 (8th Cir.1990); *Worldwide Church of God v. McNair,* 805 F.2d 888 (9th Cir.1986); *Curry v. Baker,* 802 F.2d 1302 (11th Cir.), *cert. dismissed,* 479 U.S. 1023, 107 S.Ct. 1262, 93 L.Ed.2d 819 (1986); *Hale v. Harney,* 786 F.2d 688 (5th Cir.1986); *Blue Cross & Blue Shield of Md. v. Weiner,* 868 F.2d 1550, 1556 (11th Cir.1989). Put simply, claims like these are barred from the inferior federal courts because these courts have no authority to review state court decisions or any issues that either the state court or the parties considered or raised, or could have, in the course of the state court decisions. *See, e.g., Garry, supra,* 82 F.3d at 1369–70. Rather, "[a] party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States." *United States v. Owens,* 54 F.3d 271, 274 (6th Cir.1995).

In applying the *Rooker–Feldman* Doctrine to this case, the Court is guided by the Seventh Circuit's analogous decision in *Garry, supra,* 82 F.3d 1362, which involved condemnation of land. In this case, an Illinois State Court granted an order to the Village of Bensenville, Illinois condemning property owned by one plaintiff and leased to the other plaintiff. Thereafter, the plaintiffs sought injunctive and monetary relief pursuant to 42 U.S.C.A. § 1983 in a federal district court action against several officials of the Village, alleging that the property was condemned as an act of political retaliation. The district court dismissed the case on the basis of *res judicata.*

On appeal, however, the Seventh Circuit found that the district court should have dismissed the case for lack of jurisdiction under the *Rooker–Feldman* Doctrine. First, the Court found that the plaintiffs were collaterally attacking a state court judgment because:

> While the plaintiffs complain that the defendants [sought the condemnation] as an act of political retaliation against them, the injury alleged [ (various constitutional deprivations) ] was only complete when the state court actually condemned the property.

*Garry,* 82 F.3d at 1368. Second, the Court observed that:

> If the plaintiffs desired to challenge the condemnation ... as unconstitutional, they should have done so through the Illinois condemnation process, and ultimately to the United States Supreme Court if necessary .... That the plaintiffs may have already waived the opportunity to challenge the constitutionality of the condemnation, leaving them with no forum in which to assert their claim, does not affect our lack of jurisdiction under *Rooker–Feldman.* In *Feldman* itself, the Supreme Court acknowledged this consequence: "By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court. This result is eminently defensible on policy grounds." 460 U.S. at 482 n. 16, 103 S.Ct. at 1315 n. 16.

*Garry,* 82 F.3d at 1368–69. In particular, the Court emphasized the relationship between the inextricably intertwined test and claims not raised in state court:

> Engaging in impermissible appellate review may occur when a district court is asked to entertain a claim that was not even argued in the state court but is "inextricably intertwined" with the state court judgment .... The crucial point is whether "the district court is in essence being called upon to review the state-court decision."

*Garry,* 82 F.3d at 1369 (citations omitted). Relying on these principles, the Seventh Circuit concluded that the inferior federal courts lacked jurisdiction over the case under *Rooker–Feldman* because:

> [T]he plaintiffs' claim of political retaliation, though not raised in the state condemnation action, is inextricably intertwined with that condemnation action. Their claim that the condemnation was altered by defendants in an unconstitutional manner is inextricably intertwined with the state court judgment and the finding that the power of eminent domain was being properly exercised.

*Id.* Additionally, the Court stated that the plaintiffs' § 1983 claims did not alter this

result because the damage claims were "'merely another way to contest'" the condemnation proceedings. *Id.* at 1370 (citations omitted). *See also Keene Corp., supra,* 908 F.2d at 297; *Worldwide Church of God, supra,* 805 F.2d at 893 n. 4; *Curry, supra,* 802 F.2d at 1310 n. 5; *Hale, supra,* 786 F.2d at 690–91.

▓ Thus, an inferior federal court must apply the *Rooker–Feldman* Doctrine to dismiss cases for lack of jurisdiction where: (1) the party against whom the Doctrine is being applied had the opportunity to raise the issues pending before the federal court in the instant case, or those inextricably intertwined therewith, in a prior state court proceeding; and (2) these issues, or those inextricably intertwined therewith, were adjudicated in the prior state court proceeding.

CTC does not dispute that it was a party to the appeal before Wayne County Circuit Court Judge Morcom, as was the City of Westland. However, CTC contends that it did not have the opportunity to raise the constitutional, preemption, and immunity claims at issue in this matter before the Wayne County Circuit Court and that these claims are also not inextricably intertwined with the issues that Judge Morcom decided.

### 1. CTC's Opportunity to Raise Issues before the Wayne County Circuit Court.

After the City Council denied the Application, CTC and PSCU sought judicial review of the City Council's decision in the Wayne County Circuit Court. CTC contends that this proceeding did not afford them the opportunity to raise the constitutional, preemption, and immunity issues that it has alleged in its instant Complaint. Defendants, however, argue that all of these issues could have and should have been raised before the Wayne County Circuit Court.

### a. Judicial Review under Michigan Law Regarding Zoning Decisions.

Under M.C.L.A. § 125.585, a city may provide for appeals of its zoning decisions to a zoning board of appeals, the decisions of which may then, in turn, be appealed to the

State Circuit Court for the relevant county. Where, however, the city does not provide for an appeal to a zoning board of appeals regarding the zoning decision at issue, the aggrieved party may appeal directly to the State Circuit Court, pursuant to Article 6, Section 28 of the Michigan Constitution of 1963. *Carleton Sportsman's Club, supra,* 550 N.W.2d at 869. In these circumstances, the State Circuit Court is, under Article 6, Section 13 of the Michigan Constitution, acting as an appellate court, not a court of original jurisdiction, and the scope of its inquiry is found in Art. 6, § 28 of the Michigan Constitution. *Id.* Article 6, Section 28 provides that:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review *shall include, as a minimum, the determination whether such final decisions, findings, ruling and orders are authorized by law;* and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.

Mich. Const. art. 6, § 28 (*emphasis* added).

In Westland, the Zoning Ordinance provides that a party may not appeal to the Zoning Board of Appeals a decision of the City Council to deny a special land-use. Zoning Ordinance, Art. III, § 3.11–1. Thus, pursuant to Art. 6, § 28 of the Michigan Constitution and *Carleton Sportsman's Club, supra,* 550 N.W.2d 867, CTC and PSCU appealed the City Council's denial of the special land-use Application to the Wayne County Circuit Court.

In this appeal, CTC and PSCU argued that: (1) The City Council lacked authority under the Zoning Ordinance to interpret CTC's use of the Property and to deny the Application on the basis that it was not a special land-use specifically provided for in the OB–1 Zoning District; (2) The City Council erred in denying CTC's Application for special land-use in the absence of compe-

tent, material, and substantial evidence on the record which satisfied the requirements of the Zoning Ordinance; (3) The City Council's denial of CTC's Application was arbitrary and capricious and a denial of due process; (4) The City Council's denial of CTC's Application violated substantive due process under the Fifth Amendment to the United States Constitution and under the Michigan Constitution; and (5) The City Council was estopped from denying that CTC's use was a special land-use due to the prior representations of City officials that the proposed use was a permitted special land-use in the OB–1 Zoning District.

In denying CTC's appeal and affirming the City Council's decision, Judge Morcom found that: (1) The City Council had the authority to interpret the Zoning Ordinance to determine whether CTC's proposed use was included in those uses designated as special land-uses in the OB–1 Zoning District; (2) The City Council was authorized to reject CTC's Application on the basis that the proposed use was not a special land-use in an OB–1 Zoning District; (3) The City Council's denial of CTC's Application was supported by competent material and substantial evidence and was not an abuse of discretion, nor a denial of due process; (4) The City has not violated CTC's right to substantive due process because CTC has not exhausted its administrative remedies; and (5) There is no basis for estopping the City Council from denying CTC's Application. *CTC*, No. 97–700188.

Meanwhile, in this matter, CTC's Complaint includes the following Counts:

(1) Count I: A Writ of Mandamus seeking, *inter alia,* a Court Order compelling Defendants to issue all necessary permits for CTC's intended use of the Property and enjoining Defendants from preventing CTC's intended use of the Property;

(2) Count II: CTC alleges that, in denying the Application, Defendants have engaged in "exclusionary zoning" which violates the Michigan Constitution and the Fifth and Fourteenth Amendments of the United States Constitution;

(3) Count III: CTC alleges that this "exclusionary zoning" violates M.C.L.A. § 125.581;

(4) Count IV: Defendants' conduct effected a taking in violation of Article X, Section 2 of the Michigan Constitution and the Fifth and Fourteenth Amendments to the United States Constitution;

(5) Count V: Defendants' conduct has deprived CTC of substantive due process, pursuant to 42 U.S.C. § 1983;

(6) Count VI: CTC re-alleges its exclusionary zoning claims, but in this Count alleges them pursuant to 42 U.S.C. § 1983;

(7) Count VII: Defendants' conduct has deprived CTC of its right to equal protection under the Fourteenth Amendment to the United States Constitution;

(8) Count VIII: CTC re-alleges its equal protection claim, but in this Count, alleges it pursuant to 42 U.S.C. § 1983;

(9) Count IX: CTC alleges that it is immune from the Zoning Ordinance as applied to its Application because its use of the Property is pursuant to a contract with the BOP; and

(10) Count X: The Zoning Ordinance as applied to CTC's application at issue here is preempted by federal law regarding the operation and establishment of federal penal institutions and correctional facilities.

CTC argues that the *Rooker–Feldman* Doctrine cannot bar these claims from going forward in federal court because it was not afforded the opportunity to raise them in the Wayne County Circuit Court proceedings. The Court finds CTC's argument unpersuasive in light of the relevant precedent and the procedural and factual background in this matter.

**b. *The Relevant Precedent.***

In *CSXT, Inc. v. Pitz,* 883 F.2d 468 (6th Cir.1989), the plaintiff, an interstate railroad system, sought a declaratory judgment that a rule of the Michigan Department of Transportation (the "Department") which required locomotives operating within the state to have toilets in them was preempted by federal law. The District Court granted summary judgment to the railroad system and issued a

preliminary injunction restraining the Department from enforcing the rule. On appeal, the Sixth Circuit held that under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, the District Court should have abstained in the matter.

The factual context in *CSXT, Inc., supra,* is instructive here. After receiving reports that some of its members were being asked to work on locomotives operated by the plaintiff railroad system which lacked toilets, the United Transportation Union filed a complaint with the Department, alleging that the railroad system was violating the Department's rule requiring railroads to have adequate toilet facilities. Next, the railroad system filed a motion to stay the administrative proceedings incident to the Union's complaint before the Department. At this same time, the railroad system also filed a suit for injunctive and declaratory relief in federal court. Thereafter, the Department scheduled a hearing before an administrative law judge who denied the railroad's motion to stay.

The District Court, however, issued a preliminary and then a permanent injunction preventing the Department from enforcing the rule and from moving forward with the administrative proceedings because the Court found that the Michigan regulation was preempted by the Federal Boiler Inspection Act, 45 U.S.C. §§ 22–43 and the Railroad Safety Act, 45 U.S.C. §§ 421–444. On appeal, the Union, who had intervened in the District Court action, argued that the District Court should have abstained in the matter under *Younger* and its progeny.

Incident to its analysis under *Younger*[12], the Sixth Circuit had to determine whether the proceedings before the Commission would afford the railroad system the opportunity to make its preemption argument. The Court answered this question in the affirmative:

> The ... requirement ... of an 'adequate opportunity' to raise the [preemption] issue ... is ... met, even though the state administrative agency may have no power

to hear ... [a] constitutional claim, because Michigan law supplies full judicial review of this agency proceeding.

*CSXT,* 883 F.2d at 474 (citations omitted).

The judicial review to which the Sixth Circuit was referring is that provided for under the Michigan Administrative Procedures Act (the "APA"). *Id.* Under the APA,

> ... the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:
> (a) In violation of the constitution or a statute.
> (b) In excess of the statutory authority or jurisdiction of the agency.
> (c) Made upon unlawful procedure resulting in material prejudice to a party.
> (d) Not supported by competent, material and substantial evidence on the whole record.
> (e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.
> (f) Affected by other substantial and material error of law.

M.C.L.A. § 24.306. As the Michigan Supreme Court has noted, this standard of review is virtually identical to that provided for under Article 6, Section 28 of the Michigan Constitution. See, *Michigan Employment Relations Commission v. Detroit Symphony Orchestra, Inc.,* 393 Mich. 116, 223 N.W.2d 283, 286 n. 3 (1974).

Therefore, in the context of a jurisdictional grant and standard of judicial review of an administrative proceeding that is legally indistinguishable from the instant matter, the Sixth Circuit held that the federal plaintiff challenging the action had the opportunity to raise his federal preemption argument, as well as any other federal constitutional arguments, because the Michigan courts have the ability to entertain these federal questions. *CSXT,* 883 F.2d at 472–74 ("State courts normally have concurrent jurisdiction of federal issues unless such juris-

12. The Court will next examine the instant matter under *Younger* abstention, *infra.*

diction is withdrawn by federal statute"); *See also, GTE Mobilnet v. Johnson,* 111 F.3d 469, 475, 482 (6th Cir.1997). Moreover, the Wayne County Circuit Court has "plenary jurisdiction in matters of mandamus," *Schobert v. Inter–County Drainage Board,* 342 Mich. 270, 69 N.W.2d 814, 819 (1955), and may "... issue other writs as may be necessary to carry into effect [its] orders, judgments, and decrees...." Mich. Const. art. 7, § 10. Therefore, the Court finds that CTC was capable of raising before the Wayne County Circuit Court all of the matters that it has raised before this Court.[13]

### c. *The Factual and Procedural Background Supports This Finding.*

The Court's finding that CTC could have raised all of the claims that it asserts here in the Wayne County Circuit Court action is further buttressed by the appellate proceedings themselves. In Count I of the instant Complaint, CTC seeks a Writ of Mandamus ordering the City to, *inter alia,* issue all necessary permits for its intended use of the Property and to permit construction of the Facility. In this Count, CTC seeks a determination "that the denial of the special land-use permit was not based upon standards within the jurisdiction of the City Council" and that "the City Council was mandated by law to approve the permit." (CTC's Response and Reply Regarding Count I, p. 1). Although the precise relief differs, it is obvious that this claim is identical to the arguments made in Counts I, II, and III of CTC's appeal to the Wayne County Circuit Court where, respectively, CTC contended that: (1) The City Council lacked authority under the Zoning Ordinance to interpret CTC's use of the Property and to deny the Application on the basis that it was not a special land-use specifically provided for in the OB–1 Zoning District; (2) The City Council erred in denying CTC's Application for special land-use in the absence of competent, material, and substantial evidence on the record which satisfied the requirements of the Zoning Ordinance; and (3) The City Council's denial of CTC's Application was arbitrary and capricious and a denial of due process. (D's MPSJ, Ex. D).

The fact that CTC raised essentially these same arguments to the Wayne County Circuit Court is also suggested by Judge Morcom's decision where she found that: (1) The City Council had the authority to interpret the Zoning Ordinance to determine whether CTC's proposed use was included in those uses designated as special land-uses in the OB–1 Zoning District; (2) The City Council was authorized to reject CTC's Application on the basis that the proposed use was not a special land-use in an OB–1 Zoning District; and (3) The City Council's denial of CTC's Application was supported by competent material and substantial evidence and was not an abuse of discretion, nor a denial of due process.

In Counts II and III in this matter, respectively, CTC argues that the City Council has engaged in exclusionary zoning in violation of the Michigan Constitution and the Fifth and Fourteenth Amendments of the United States Constitution, and in violation of M.C.L.A. § 125.581. In Count I of its brief on appeal, CTC argued that the City Council acted in derogation of M.C.L.A. § 125.581 and "likely [made its decision] based upon perceived political pressure ..." (D's MPSJ, Ex.D, pp. 12–13). Moreover, in its Count IV on appeal to the Wayne County Circuit Court, CTC argued that the City Council's decision violated the Michigan Constitution and the Fifth Amendment because it did not bear any reasonable relationship to the public health, safety, and welfare. (*Id.* at 29). In the Wayne County Circuit Court decision, however, Judge Morcom held that:

> The City Council simply found that CTC's proposed use was not among those that were expressly designated in the list of special land-uses for the OB–1 district. Left open by that decision was whether CTC's use was covered by another provision of the [Zoning] Ordinance, and if not, whether it might be appropriately designated by the [Zoning Board of Appeals] as a special land-use for an OB–1 district or some other district through the process

---

13. The Court will discuss this point with respect to CTC's § 1983 claims, *infra.*

established in [Article IV, § 4.9 of the Zoning Ordinance].

*CTC*, No. 97–700188, slip op. at p. 7. Thus, although CTC may not have labelled its appellate argument "exclusionary zoning," it did indeed argue that the City Council's decision was unfounded, illegal, and motivated by factors which, under the Zoning Ordinance, the City Council was forbidden from considering. Accordingly, the Court finds that CTC had the opportunity to make its exclusionary zoning arguments to the Wayne County Circuit Court and that it acted on this opportunity, albeit unsuccessfully.

In Count VI of the Complaint, CTC again alleges exclusionary zoning, although, this Count alleges the claim pursuant to 42 U.S.C.A. § 1983. It is well-established that § 1983 does not itself provide any substantive rights, but rather, is a derivative claim based on violations of other rights provided by the Constitution or Acts of Congress. *See, e.g., Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–17, 60 L.Ed.2d 508 (1979). Thus, in applying *Rooker–Feldman*, the Court's inquiry is not whether CTC was capable of bringing a § 1983 damages claim in Wayne County Circuit Court, but rather, whether it had the opportunity to litigate the underlying constitutional deprivation. *See also, Garry*, 82 F.3d at 1370; *Keene Corp., supra*, 908 F.2d at 297; *Worldwide Church of God, supra*, 805 F.2d at 893 n. 4; *Curry, supra*, 802 F.2d at 1310 n. 5; *Hale, supra*, 786 F.2d at 690–91. As the Court found above, CTC could have litigated, and effectively did litigate, its constitutional exclusionary zoning claim. Thus, the issues underlying this § 1983 claim were essentially decided by Judge Morcom. This same reasoning also applies to CTC's Count V, a violation of substantive due process pursuant to 42 U.S.C.A. § 1983, because Judge Morcom held that CTC was not deprived of substantive due process since it had not exhausted its administrative remedies.

CTC's Count IV before this Court alleges that the City Council's decision effected a taking of CTC's property rights in violation of the Michigan Constitution and the United States Constitution because the decision is an arbitrary and unreasonable restriction on its use of the Property. As the Court noted above, CTC argued on appeal that the City Council's decision was arbitrary and not consistent with the Zoning Ordinance. Judge Morcom, however, concluded the opposite. To the extent that CTC's takings argument is broader than this, the Court finds that CTC could have made this argument before the Wayne County Circuit Court. *See Turkish v. City of Warren*, 61 Mich.App. 435, 232 N.W.2d 732, 732–33 (1975), *aff'd in Zaagman, Inc. v. City of Kentwood*, 406 Mich. 137, 277 N.W.2d 475, 480 (1979) (Michigan Court of Appeals affirmed Macomb County Circuit Court decision where the plaintiff argued, and Macomb County Circuit Court held, that, as applied to the plaintiff's property, the City of Warren's zoning ordinances were unreasonable, arbitrary, confiscatory, and unconstitutional so as to prevent any feasible use of the property).

In its Count VII before the Court, CTC alleges that it has been denied equal protection because the City Council's denial of the Application is biased, discriminatory, and not rationally related to a legitimate governmental purpose. In its appellate brief to the Wayne County Circuit Court, CTC argued that the City Council lacked the authority to make the decision it made and that the decision itself was arbitrary, illegal, and not rationally related to public health, welfare, and safety. Judge Morcom, however, found that the City Council had the authority to make the decision that it did and that the decision itself was consistent with the applicable laws and procedures. Thus, the Court finds that CTC's equal protection claim is a cloak for the arguments that CTC made previously to the Wayne County Circuit Court.

Nevertheless, in its pleadings, CTC suggests that it should not be barred from making its equal protection argument before this Court because the record on appeal to the Wayne County Circuit Court, which was limited to the proceedings and documents before the City Council and its various planning organizations and officials, did not include facts which CTC alleges are critical to its equal protection claims, including the City Council's treatment of other applicants who

were similarly situated to CTC. The Court finds this argument unpersuasive because Judge Morcom's finding, as a matter of law, that the City Council's decision was well-founded, well-reasoned, based on the applicable laws and procedures, and incident to permissible governmental purposes prevents CTC from mounting any equal protection claim given that the relevant standard would simply be a rational basis test, as CTC does not fall into any suspect classification.

In Count VIII, CTC alleges a denial of equal protection pursuant to 42 U.S.C.A. § 1983. As the Court has discussed, § 1983 claims are derivative of deprivations of constitutional and/or federal statutory rights. Thus, as indicated above, CTC's equal protection claim, and thus, its § 1983 claim here were effectively decided by Judge Morcom.

CTC's Counts IX and X allege, respectively, that CTC, as a contractor with the BOP, is immune from local zoning ordinances, and that because CTC is contractually performing services for the BOP incident to BOP's federal statutory and regulatory responsibilities, the Zoning Ordinance is preempted as a matter of federal law. Immunity and preemption are purely legal questions, *see Hancock v. Train*, 426 U.S. 167, 178, 96 S.Ct. 2006, 2012, 48 L.Ed.2d 555 (1976) (immunity) and *GTE Mobilnet v. Johnson, supra*, 111 F.3d at 475 (6th Cir.1997) (preemption), which, regardless of the factual record, CTC could have raised before the Wayne County Circuit Court, in addition to the other federal constitutional challenges that CTC made. The Wayne County Circuit Court had the power to determine whether the City Council's decision was constitutional and authorized by law. Under this standard of review, the Circuit Court could have decided CTC's immunity and preemption claims.

At the oral argument on this matter, CTC found it significant that, in response to its preemption and immunity claims, Defendants pointed to internal BOP documents which require CCC contractors to comply with local zoning ordinances. Specifically, CTC claims that Defendant's argument shows that its preemption and immunity claims are matters which could not be resolved at the Wayne County Circuit Court because CTC's contract

with the BOP was not in the record that was before the City Council. The Court finds this argument obfuscatory because when deciding questions of preemption and immunity courts look to the state and federal statutes at issue and, if necessary, the pertinent legislative history, in order to determine if there is a conflict between the state and federal regimes and what Congress' intent was in passing the federal law. These are all questions of law which are not in any way dependent on Defendant's arguments or what was or was not part of CTC's contract with the BOP.

In summary, therefore, the Court finds that CTC had the opportunity in the Wayne County Circuit Court to raise, as a substantive matter, all of the legal issues which they have presented to this Court, even though they have attempted, in some circumstances, to disguise the merits of their underlying arguments in the form of some challenges and some requests for relief which they did not present to the Wayne County Circuit Court. *See also, Krohn v. City of Saginaw*, 175 Mich.App. 193, 437 N.W.2d 260, 263 (1988) (Although the plaintiffs' various counts alleged different violations of the state and federal constitutions and other provisions of state law, the counts "all raise[d] issues relative to the decision of the planning commission and the procedures employed by the planning commission in reaching that decision. Thus, they do not establish separate causes of action, but merely address alleged defects in the methods employed by the planning commission or the result reached by the commission").

### 2. The Prior State Court Proceedings Were Judicial Proceedings.

In its pleadings, CTC argues that the Court should find significance in the fact that the proceedings before the Wayne County Circuit Court were not a lawsuit, but rather were simply judicial review of the City Council's decision. Obviously, this distinction also underlies CTC's arguments about the inadequacy of the record on which the Wayne County Circuit Court acted. The Court finds that, for *Rooker–Feldman* purposes, this distinction is one without a difference because

the Wayne County Circuit Court was performing a judicial function when it determined that the City Council's decision was "authorized by law." Mich. Const. art. 6, § 28.

The Supreme Court focused on the importance of this point in its decision in *Feldman, supra,* 460 U.S. at 476–81, 103 S.Ct. at 1311–14. In *Feldman,* the Supreme Court found that the federal District Court lacked jurisdiction over the plaintiff's constitutional challenge to the denial of his bar application which was affirmed by the District of Columbia Court of Appeals. *Id.* at 487–88, 103 S.Ct. at 1317–18. In finding that the District of Columbia Court of Appeals' affirmation of the bar admissions committee's decision was a judicial proceeding to which the now-named *Rooker–Feldman* Doctrine applied, the Supreme Court held that where a court makes a " 'judicial inquiry' " into a factual record produced by an administrative or ministerial body, or a body acting in that capacity, this constitutes a prior state court proceeding for the purposes of determining whether the inferior federal court is effectively acting as an appellate court over a state court decision. *Feldman,* 460 U.S. at 477–81, 103 S.Ct. at 1312–14 (citations omitted).

■ In so holding, the Court also stated that with respect to the form of the record and the state court proceeding, a Court applying the *Rooker–Feldman* Doctrine should note that " '[t]he form of the proceeding is not significant. It is the nature and effect which is controlling.' " *Id.* at 482, 103 S.Ct. at 1314. Thus, the Court finds that the record on which the Wayne County Circuit Court and the City Council relied and the proceedings before them were incident to a "judicial inquiry" so as to make the City Council's action and the Wayne County Circuit Court's decision a "prior state court proceeding" for the purposes of applying the *Rooker–Feldman* Doctrine.[14] *See also, CSXT,* 883 F.2d at 474 (finding that an administrative proceeding which was subject to judicial review was an on-going state judicial proceeding for the purposes of applying *Younger* abstention).

### 3. The Court Cannot Act as a Court of Appeal over the Wayne County Circuit Court.

■ Having found that CTC had the opportunity to raise in the prior State judicial proceeding all of the issues that it has brought before this Court, the Court also finds that CTC's Complaint effectively asks this Court to adjudicate issues, or those inextricably intertwined therewith, which the state court has already decided. Specifically, if the Court were to grant CTC the relief that it requests, the Court would have to find, contrary to Judge Morcom's decision, that the City Council acted arbitrarily, capriciously, and in derogation of its authority, the law, and the Michigan and federal constitutions. This Court, as an inferior federal court, simply lacks jurisdiction to do this. Moreover, to the extent that CTC's arguments here, including the § 1983 claims, were not raised in the prior state court proceedings, they are issues which are inextricably intertwined therewith because, by virtue of their arguments to this Court, CTC is collaterally attacking Judge Morcom's determination that the City Council's decision was constitutional and authorized by law. *See Garry, supra,* 82 F.3d at 1369. Clearly, if the City Council had granted the Application or if the Wayne County Circuit Court had agreed with any of CTC's arguments, CTC would not be before this Court claiming preemption, immunity, and a host of constitutional violations. *See Id.* at 1368. Accordingly, the Court finds that all of CTC's claims should be dismissed with prejudice for lack of jurisdiction pursuant to the *Rooker–Feldman* Doctrine.

### D. Younger Abstention.

In addition to urging the Court to dismiss this case under the *Rooker–Feldman* Doctrine, Defendants contend that the Court

---

14. In *Feldman,* however, the Supreme Court did note that if the plaintiff were making a general challenge to constitutionality of the bar admissions rules and procedures themselves, as opposed to challenging the constitutionality of how they were applied to him, then the federal District Court would have jurisdiction. 460 U.S. at 483–84, 103 S.Ct. at 1316. Here, Plaintiffs are challenging the constitutionality of the Zoning Ordinance as applied.

should abstain from deciding the merits of this case pursuant to *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. CTC responds that *Younger* is inapplicable here because its claims do not seek to enjoin, restrain, or intervene in an on-going, state adjudicative proceeding; there was no adequate opportunity for CTC to bring its claims in the Wayne County Circuit Court; and the State has no interests which are implicated in this matter.

### 1. *Younger and Its Progeny.*

In *Younger,* the United States Supreme Court held that federal courts should not enjoin pending state criminal proceedings except in a "very unusual circumstance" where an injunction is necessary to prevent "both great and immediate" irreparable injury. *Id.* at 44–46, 91 S.Ct. at 751. Grounded on principles of equity and on the "more vital consideration" of the concerns for comity and federalism, *id.* at 42–44, 91 S.Ct. at 750, the Court explained that federal courts must be sensitive to "the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the states." *Id.* at 44, 91 S.Ct. at 750. Thus, the *Younger* Court found the possible unconstitutionality of a statute does not justify an injunction against good faith efforts of the state to enforce it. *Id.* at 54, 91 S.Ct. at 755.

▋ *Younger* established the principle that in cases seeking to enjoin or otherwise interfere with on-going state proceedings—be they criminal, civil, or administrative—federal courts should not exercise jurisdiction but should instead dismiss the cases in their entirety. *See Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). The abstention rule announced in *Younger* with respect to injunctive relief applies with equal force to requests for declaratory relief in federal courts. *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971);

*See also, Younger, supra,* 401 U.S. at 41 n. 2, 91 S.Ct. at 749 n. 2.

▋ In determining the applicability of the *Younger* abstention rule, the Court should consider three factors: (1) whether there is an on-going state proceeding; (2) whether the proceedings implicate an important state interest; and (3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). If a state action is pending when the federal complaint was filed, the federal action must be dismissed. *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). As indicated above, the Supreme Court has held that this rule applies not only to pending criminal prosecutions, but also to civil proceedings which implicate important state interests. *See Huffman, supra,* (civil proceeding to enforce nuisance law); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (state civil contempt proceeding); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (civil enforcement action brought by the state). Moreover, it is well-settled that for *Younger* purposes, the state's "trial-and-appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening midprocess would demonstrate a lack of respect for the state as a sovereign." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 369, 109 S.Ct. 2506, 2519, 105 L.Ed.2d 298 (1989).

However, under some circumstances, a court need not apply *Younger* abstention. In particular, the Supreme Court has developed three exceptions to *Younger:*

(1) The "state proceeding is motivated by a desire to harass or is conducted in bad faith." *Huffman, supra,* 420 U.S. at 611, 95 S.Ct. at 1212.

(2) The "challenged provision is flagrantly and patently violative of express constitutional prohibitions." *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979).

(3) There is "an extraordinarily pressing need for immediate equitable relief." *Kugler v. Helfant*, 421 U.S. 117, 124–25, 95 S.Ct. 1524, 1530–31, 44 L.Ed.2d 15 (1975).

## 2. *The Sixth Circuit's Decision in GTE Mobilnet.*

The Sixth Circuit has just recently had the opportunity to consider *Younger* abstention in a dispute involving the Commissioners of the Public Utilities Commission of Ohio (the "Commission"). *GTE Mobilnet, supra*, 111 F.3d 469. In *GTE Mobilnet*, Cellnet, a cellular telephone services provider, filed a complaint before the Commission alleging that GTE Mobilnet and New Par, operators of cellular telephone networks, had violated Ohio law and several of the Commission's orders concerning cellular telephone service. When Cellnet attempted to obtain discovery, GTE Mobilnet and New Par moved for dismissal, arguing that federal law preempted the Commission's authority to hear the case. The Commission denied the motions to dismiss.

Thereafter, GTE Mobilnet and New Par filed an action in federal court for injunctive relief, arguing that if the Commission granted Cellnet its requested relief, the Commission would have to regulate cellular telephone rates which GTE Mobilnet and New Par contended was preempted by 47 U.S.C. § 332(c)(3)(A). The District Court granted a preliminary injunction despite Cellnet's arguments that the Court should abstain under *Younger, supra*, or *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Subsequently, the District Court's action was reviewed on appeal.

The Sixth Circuit began its analysis by discussing the relationship between preemption and abstention. In particular, the Court stated that by virtue of its decisions in *CSXT, supra*, 883 F.2d at 472–74, and *Federal Express Corp. v. Tennessee Public Service Commission*, 925 F.2d 962, 967–68 (6th Cir.), *cert. denied*, 502 U.S. 812, 112 S.Ct. 59, 116 L.Ed.2d 35 (1991), "when state and federal courts have concurrent jurisdiction to decide preemption questions, a federal court should abstain to allow the state court to consider the preemption issues." *GTE Mobilnet*, 111 F.3d at 475. However, the Court noted that in *Bunning v. Com. of Kentucky*, 42 F.3d 1008, 1011 (6th Cir.1994), and *Norfolk & Western Railway Co. v. Public Utilities Commission*, 926 F.2d 567, 573 (6th Cir. 1991), it had held that "if the issues present facially conclusive claims of federal preemption," a court should decide the preemption question and not abstain. *Id.*

With this case law in hand, the Court found that there was no facially conclusive claim of federal preemption because after reading the federal statute, 47 U.S.C. § 332, on its face, the Court could not conclusively determine that the federal statute preempted the Ohio law at issue. *Id.* at 478. Specifically, since Cellnet was requesting that the Commission make Mobilnet and New Par charge Cellnet the same rate that they were charging other retailers, the Sixth Circuit could not determine from the statute or its legislative history whether this relief would be preempted by the statute, which provided that while states could not regulate market entry and rates charged, they could regulate "other terms and conditions" of service. *Id.* at 477–80.

Next, the Court examined two questions: (1) whether the state court has concurrent jurisdiction to decide the preemption issue; and (2) whether the principles of *Younger* and its progeny dictated that the Court abstain in favor of the on-going state proceedings. *Id.* at 480. Relying on *CSXT*, 883 F.2d at 472–74, the Court found that under the applicable judicial review provision which provided for a determination of whether the Commission's decision was "unlawful or unreasonable," Ohio R.C. § 4903.13, the state court had concurrent jurisdiction over federal issues, including preemption. *GTE Mobilnet*, 111 F.3d at 480–82.

With respect to the proceedings before the Commission, the Court found that they were "on-going state proceedings" because the Union's complaint before the Commission was filed prior to the federal court action. *Id.* at 481. Moreover, relying on the same analysis that this Court employed when discussing the *Rooker–Feldman* Doctrine, *supra*, the Sixth Circuit found that the

proceedings before the Commission and the appellate review of those proceedings were judicial in nature since they involved a judicial inquiry into the rights and liabilities of the party under the laws and facts as they existed. *Id.*

Finally, the Sixth Circuit found that the policy rationale behind *Younger* abstention was applicable because Ohio had a substantial and legitimate interest in the proceedings since the regulation of utilities was an important state function. *GTE Mobilnet,* 111 F.3d at 481–82. In reaching this conclusion, the Court re-iterated the Supreme Court's admonition "that when considering the 'substantiality of a State's interest in its proceedings we do not look narrowly to its interest in the outcome of a particular case … [but to] the importance of the generic proceedings to the State." *Id.* (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 371, 109 S.Ct. 2506, 2519–20, 105 L.Ed.2d 298 (1989)).

### 3. *Applying Younger to the Instant Matter.*

As the Sixth Circuit has observed:

Three requirements have developed for proper application of the *Younger* doctrine [with regard to civil cases]:

> (1) there must be on-going state judicial proceedings;
>
> (2) those proceedings must implicate important state interests; and
>
> (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges.

*GTE Mobilnet,* 111 F.3d 469, 480–81 (quoting *Sun Refining Marketing Co. v. Brennan,* 921 F.2d 635, 639 (6th Cir.1990) and citing *Middlesex County Ethics Comm., supra,* 457 U.S. at 432, 102 S.Ct. at 2521); *See also, Hayse v. Wethington, Jr.,* 110 F.3d 18, 20 (6th Cir.1997).

#### a. *On-going Proceedings.*

 In this case, CTC and PSCU appealed the City Council's decision to the Wayne County Circuit Court prior to filing this matter before the Court. Moreover, CTC is now appealing the Wayne County Circuit Court's decision to the Michigan Court of Appeals.

Thus, it is clear that for the purposes of *Younger,* a state court proceeding was pending at the time this action was filed and one is pending before the Michigan Court of Appeals, each of which militates in favor of *Younger* abstention. See, *Huffman v. Pursue,* 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975) ("Virtually all of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings"); *New Orleans Pub. Serv., Inc., supra,* 491 U.S. at 369, 109 S.Ct. at 2518–19 (state appeals process is a unitary system which should not be disrupted midprocess); *Hicks, supra,* 422 U.S. at 349–50, 95 S.Ct. at 2291–92 (if state proceeding is pending when the federal complaint was filed, the federal action must be dismissed); *World Famous Drinking Emporium, Inc. v. City of Tempe,* 820 F.2d 1079, 1082 (9th Cir.1987) (plaintiff's failure to appeal adverse judgments in two related state cases satisfied requirement of on-going state judicial proceedings).

In particular, if the Court were to grant CTC the relief that they request—ordering the City to issue the permits and not to enforce the Zoning Ordinance against CTC or determining that preemption and/or immunity apply to void the Zoning Ordinance as applied to CTC—the Court would be interfering with the State proceedings and the enforcement of the State Court judgments. Moreover, even with respect to CTC's damages claims under § 1983, the Court would still be interfering with the state proceedings because incident to entertaining the § 1983 claims, the Court would have to determine whether CTC's constitutional rights were violated, a matter which Judge Morcom has effectively decided against Plaintiffs. Thus, the Court finds that the first prong of *Younger* abstention is present.

#### b. *Important State Interests.*

 The State proceedings here involve the interpretation and enforcement of State and local zoning and land-use laws and policies. It is well-established that for abstention purposes, the enforcement and application of zoning ordinances and land-use

regulations is an important state and local interest.[15] *See, Huffman,* 420 U.S. at 595–605, 95 S.Ct. at 1204–08 (civil enforcement of nuisance law); *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 819–20, 96 S.Ct. 1236, 1247, 47 L.Ed.2d 483 (1976) (determination of water rights); *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (scope of eminent domain power of municipalities); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (permit to drill oil wells); *Belle Terre v. Boraas,* 416 U.S. 1, 13, 94 S.Ct. 1536, 1543, 39 L.Ed.2d 797 (1974) (Marshall, J., dissenting on other grounds) ("Our role is not and should not be to sit as a zoning board of appeals"); *Pomponio v. Fauquier County Board of Supervisors,* 21 F.3d 1319 (4th Cir.1994) ("[S]tate and local zoning and land-use law is particularly the province of the State and ... federal courts should be wary of intervening in that area in the ordinary case ... [because] [w]e can conceive of few matters of public concern more substantial than zoning and land-use laws"); *Mission Oaks Mobile Home Park v. City of Hollister,* 989 F.2d 359, 361 (9th Cir. 1993) (mobilehome park rent control ordinances); *Sinclair Oil Corp. v. County of Santa Barbara,* 96 F.3d 401, 409 (9th Cir. 1996) ("land-use planning is a sensitive area of social policy" which federal courts typically ought not enter); *Izzo v. Borough of River Edge,* 843 F.2d 765, 769 (3d Cir. 1988) ("We share ... the federal judiciary's traditional respect for local administration and control of land-use regulation. Federal courts have expressly disavowed any desire to sit as a statewide board of zoning appeals hearing challenges to mu-

nicipalities .... Land-use policy customarily has been considered an area in which the tenets of federalism are particularly strong").

Here, important state interests are implicated in all of CTC's claims, including the § 1983 Counts, because in deciding these issues the Court would be reviewing the legality and constitutionality of the City Council's decision under the Zoning Ordinance—something that the State Court system is already doing. Accordingly, the Court finds that the second prong of *Younger* abstention is met.

### c. Opportunity to Raise Constitutional Challenges.

As the Court explained in its discussion of the *Rooker–Feldman* Doctrine, the state proceedings at issue here provide CTC with the opportunity to bring the constitutional claims in Counts I, II, III, IV, VII, IX, and X and those that underlay their § 1983 actions in Counts V, VI, and VIII.[16] *See* Section C.1.b, *supra; CSXT, supra,* 883 F.2d at 472–74; *World Famous Drinking Emporium, Inc., supra,* 820 F.2d at 1083 (*Younger* abstention in § 1983 case proper where the plaintiff had the opportunity to bring his constitutional claims in prior state court proceedings). Additionally, under *GTE Mobilnet, supra,* 111 F.3d 469, CTC's preemption claim is not an obstacle to *Younger* abstention because it is not facially conclusive under the relevant BOP statutes and regulations, which on their face are silent about local zoning and land-use ordinances with respect to contractors providing CCC services. *See* 18 U.S.C.A. § 4081 *et seq.;* 29 C.F.R. § 0.95 *et seq.*[17] Therefore, the Court finds that the third prong of *Younger* abstention is fulfilled.

---

15. As Defendants point out, failure to comply with the Zoning Ordinance is a nuisance and a misdemeanor.

16. The Sixth Circuit has held that *Younger* abstention may apply to § 1983 claims provided that the plaintiff may make his constitutional arguments in the state proceeding. *See, Hayse, supra,* 110 F.3d 18, 21–22. Here, as the Court has noted, CTC could have raised, and was not precluded from raising, the constitutional claims that it has raised in this action during the State Court proceedings.

17. Unlike the preemption claim, the Court is not aware of any special considerations that it should apply with respect to claims of immunity like the one that CTC has alleged. However, if such an approach were to exist, the Court presumes that it would parallel the treatment of preemption claims. Thus, under such circumstances, the result here would be the same with respect to the immunity claim.

#### d. *Younger Exceptions.*

Having found that the requirements of *Younger* abstention are met, the Court will examine whether any of the exceptions to *Younger* apply. To reiterate, the Supreme Court has developed three exceptions to *Younger:*

(1) The "state proceeding is motivated by a desire to harass or is conducted in bad faith." *Huffman, supra*, 420 U.S. at 611, 95 S.Ct. at 1212.

(2) The "challenged provision is flagrantly and patently violative of express constitutional prohibitions." *Moore v. Sims*, 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979).

(3) There is "an extraordinarily pressing need for immediate equitable relief." *Kugler v. Helfant*, 421 U.S. 117, 124–25, 95 S.Ct. 1524, 1530–31, 44 L.Ed.2d 15 (1975).

█ The Court finds that none of the exceptions exist here. First, the bad faith prosecution exception is not available where the pending claims could be presented in state proceedings and there is no allegation of impermissible bias on the part of the state judiciary. *Moore, supra*, 442 U.S. at 432, 99 S.Ct. at 2381–82. The State Courts can hear all of CTC's claims and there is no allegation of a biased state judiciary, thus, the Court concludes that the bad faith exception is not present.

█ The second exception regarding patently unconstitutional laws is only available if there is a statute at issue which is "flagrantly and patently violative of express constitutional provisions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger*, 401 U.S. at 53–54, 91 S.Ct. at 755. CTC does not challenge the constitutionality of the Zoning Ordinance it-

self and Judge Morcom has found that the City Council's decision was permissible and correct as a matter of law. Moreover, the Court has found that there is no facially conclusive claim of preemption here. Accordingly, the Court finds that the second exception is not met.

█ final exception, "an extraordinarily pressing need for immediate equitable relief," applies when the federal court concludes that the state proceedings are inadequate because there is no available state forum for the plaintiff's constitutional claims, *Gerstein v. Pugh*, 420 U.S. 103, 107–08, 95 S.Ct. 854, 860, 43 L.Ed.2d 54 (1975), or the state judicial or administrative officers have a conflict of interest or are biased, *Gibson v. Berryhill*, 411 U.S. 564, 576–78, 93 S.Ct. 1689, 1696–97, 36 L.Ed.2d 488 (1973). The state proceedings here afford CTC the opportunity to raise all of its constitutional claims and there is no showing or allegation that the state judiciary is biased. Therefore, the Court concludes that all of the requirements of, and none of the exceptions to, *Younger* abstention are met here. Accordingly, the Court finds that it should abstain in this matter under *Younger*.[18]

### V. CONCLUSION

For the foregoing reasons, the Court finds that it lacks jurisdiction over this case pursuant to the *Rooker–Feldman* Doctrine and that abstention under *Younger* would also be appropriate,

NOW, THEREFORE, IT IS HEREBY ORDERED that this case is DISMISSED WITH PREJUDICE.

---

**18.** Having found that both *Rooker–Feldman* and *Younger* apply to this case, the Court will not reach the *Burford* Abstention and *Colorado River* Abstention issues. However, the Court does note that it is likely that these two doctrines also apply to this matter and would warrant the dismissal of CTC's Counts I—VIII. *See Pomponio, supra,* 21 F.3d 1319 (4th Cir.1994) (Applying *Burford* Abstention to zoning cases); *New Orleans Pub.*

*Serv., Inc., supra,* 491 U.S. at 361–62, 109 S.Ct. at 2514–15 (*Burford* Abstention ordinarily does not apply to preemption claims); *Colorado River Water Conservation District, supra,* 424 U.S. 800, 96 S.Ct. 1236; *Baskin v. Bath Township Board of Zoning Appeals,* 15 F.3d 569 (6th Cir.1994) (strict identity of issues between state and federal proceedings required).