CLAYTON GROUP SERVICES, INC., Plaintiff,

v.

FIRST ALLMERICA FINANCIAL LIFE INSURANCE COMPANY; Group Perks, Inc., and Robert Schecter & Associates, Defendants.

No. 00–CV–74486–DT.

United States District Court, E.D. Michigan, Southern Division.

Sept. 28, 2001.

Walter J. Czechowski, Centerline, Michigan, for plaintiff.

Paul R. Bernard, Detroit, Michigan, Francis R. Ortiz, Detroit, Michigan, for First Allamerica Financial, defendant.

Michael J. Sullivan, Southfield, Michigan, John M. Cooney, Southfield, Mich., for Group Perks and Robert Schecter & Assoc, defendant.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

ROSEN, District Judge.

## I. INTRODUCTION

This action arises out of a dispute between Plaintiff Clayton Group Services, Inc. ("Clayton") and Defendants First Allmerica Financial Life Insurance Company ("First Allmerica"), Robert Schechter & Associates ("Schechter"), and Group Perks, Inc. ("Group Perks") concerning the calculation of premiums charged by First Allmerica on a group health insur-

ance policy issued to Clayton. Schechter and Group Perks are insurance agencies that have served as Clayton's agents concerning insurance, financial and employee benefits matters.

On June 29, 1999 Plaintiff sued these same Defendants in Michigan state court. Plaintiff's state court complaint alleged verbatim three of the four claims alleged by Plaintiff in the instant action: misrepresentation, breach of contract, and negligence. [*Compare* Counts I, II and III of Plaintiff's Complaint in this action with Plaintiff's state court complaint, Defendants Group Perks/Schechter's Brief, Ex. E.][1] On February 9, 2000, Oakland County Circuit Judge Steven Andrews granted Defendant First Allmerica's motion for summary disposition in the state court action and dismissed Plaintiff's claims against this defendant. Then, on March 28, 2000, the Oakland County Circuit Court granted Defendants' Schechter's and Group Perks' motion for summary disposition, and entered a judgment of dismissal on the merits in favor of all the Defendants. Plaintiff filed an appeal of right with the Michigan Court of Appeals.[2]

Meanwhile, after the Oakland County Circuit Court rendered its decision dismissing Plaintiff's state court complaint and during the pendency of Plaintiff's state appeal to the Michigan Court of Appeals, Plaintiff filed the instant action in this Court.

Defendants now have moved for summary judgment and dismissal of Plaintiff's Complaint in its entirety on *res judicata* and/or *Rooker–Feldman* grounds. Plaintiff has responded to Defendants' motions

---

**1.** Plaintiff's Complaint in this action adds a Count IV which contains an ERISA claim. It is this federal claim upon which this Court's subject matter jurisdiction over Plaintiff's Complaint is predicated.

**2.** Plaintiff's state appeal is still pending.

and has also cross-moved for summary judgment in its favor. Having reviewed and considered the parties' motions, briefs and supporting documents the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided "on the briefs." This Opinion and Order sets forth the Court's ruling.

## II. *FACTUAL BACKGROUND*

Plaintiff Clayton Group Services, Inc. is an environmental safety consulting company with approximately 500 employees throughout the United States. As of January 1, 1997, Plaintiff's employees were insured under a group health care policy issued by First Allmerica. Because of its significant claims history, Plaintiff's premiums with First Allmerica for policy year 1998 would have been substantially larger that those which Plaintiff paid in 1997. Plaintiff, therefore, decided to examine the possibility of switching health care programs, and consulted Group Perks/Schechter, who investigated the availability of HMO coverage. Because of logistical problems presented by Plaintiff's far-reaching operations, it was determined that it would be impossible to enroll all of Plaintiff's employees into an HMO plan before the termination of the First Allmerica plan. Therefore, certain employees were left on the First Allmerica policy until their HMO policies could be put into effect.

Plaintiff and Group Perks/Schechter were concerned about the effect that leaving employees on the First Allmerica policy would have on the premium that First Allmerica would charge. At Plaintiff's request, Group Perks/Schechter contacted First Allmerica. According to Plaintiff, Peter Mendler of Group Perks/Schechter and Joseph Graham, the sales manager of First Allmerica discussed the language of the Group Policy, and Mr. Graham erroneously stated that the maximum premium for any given month was based on the number of Plaintiff's employees covered under the plan that month. Thus, Mr. Mendler was assured that Plaintiff would only be charged for the employees that were left on the First Allmerica plan. [*See* Mendler Dep., Plaintiff's Ex. B, pp. 28–29.]

Based on these assurances, Plaintiff alleges that it switched the majority of its employees to separate insurance contracts with HMOs in February 1998. However, First Allmerica still charged Clayton premiums reflecting coverage for the employees that had been switched to HMOs. Plaintiff subsequently learned that premiums for the First Allmerica policy were actually determined on a three-month "lag" time, i.e., based on the number of employees that were covered under the plan in the third preceding month, not how many employees were currently covered under the plan. Plaintiff asked Allmerica to refund what it considered to be an overcharge of $113,304.78, reflecting premiums it was charged for employees no longer covered under the First Allmerica policy, but this request was refused.

## THE STATE COURT ACTION

When First Allmerica refused to reimburse Plaintiff for the alleged overcharge, Plaintiff filed suit in Oakland County Circuit Court, alleging that First Allmerica "carelessly, negligently and/or purposely" misled Plaintiff regarding "the interpretation of the Group Policy to the detriment of the Plaintiff." Plaintiff further alleged that First Allmerica breached the insurance contract by violated the policy provisions concerning the requisite notice for premium rate increases. Plaintiff also asserted claims of negligence and misrepresentation against its agent Group Perks/Schechter based upon Peter Men-

dler's alleged misinterpretation of the premium provisions of the policy.

After the completion of substantial discovery in the state court case, the Circuit Court granted Defendants' motions for summary disposition. The state court found that "Plaintiff's cause of action stems from the terms of the Plan regarding the monthly claim limit and the rate notice provision," and that "plaintiff's claims [against First Allmerica'] have their genesis in the Plan." Therefore, the state judge held that Plaintiff's claims were preempted by ERISA. [*See* Plaintiff's Brief, Ex. F.] The court subsequently granted Group Perks/Schechter's motion for summary disposition on the same grounds that it granted First Allmerica's motion, finding that Plaintiff's negligence and misrepresentation claims against these Defendants were sufficiently related to an ERISA Plan to be preempted. [*See* Group Perks/Schechter Brief, Ex. G.] Plaintiff also filed a motion for reconsideration and/or clarification asking the state court to declare that, because its decision was predicated upon ERISA preemption, it was not a ruling "on the merits." Judge Andrews refused to so modify or clarify his prior rulings and, instead, specifically held that his rulings "constituted a dismissal on the merits of Plaintiff's state claims...." *Id.* at p. 4. Plaintiff appealed Judge Andrews' decisions to the Michigan Court of Appeals. That appeal is still pending.

After the briefing phase of the state appeal was completed, Plaintiff filed its Complaint in this action with this Court. As indicated above, the first three counts in Plaintiff's Complaint in this action are identical to those in its state-court complaint alleging claims of negligence, breach of contract and misrepresentation. The only difference between the two complaints is that Plaintiff has now included in this action a fourth count which Plaintiff alleges "arises under" ERISA. [Complaint, Count IV, ¶ 2.] The substantive allegations under this count, however, merely re-assert Plaintiff's allegations of breach of contract, negligence and misrepresentation and cast them as ERISA claims. *See id.* Count IV, ¶¶ 1, 6(a)–(d).

Defendants now seek entry of summary judgment and dismissal of Plaintiff's Complaint in its entirety arguing that this action is barred by under principles of *res judicata* (claim preclusion) and/or the *Rooker–Feldman* doctrine.

### III. *DISCUSSION*

#### A. *THE RES JUDICATA EFFECT OF THE STATE COURT DECISION*

The *res judicata* effect of state court judgments in federal court is governed by 28 U.S.C. § 1738 which requires the federal court to look to state law of *res judicata*.[3] *Smith, Hinchman and Grylls, Associates v. Tassic,* 990 F.2d 256, 257 (6th Cir.1993). *see also, Migra v. Warren City School Dist.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984) ("[A] Federal Court must give to a State Court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered.")

Under Michigan law, the doctrine of *res judicata* precludes parties or their privies from relitigating issues that were

---

**3.** 28 U.S.C. § 1738 provides, in pertinent part:

The records and judicial proceedings of any court of any ... State, Territory or Possession [of the United States] *** shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

or could have been raised in an earlier action, if:

(1) The prior action was decided on its merits;

(2) The issues raised in the second case either were resolved in the first, or through the exercise of reasonable diligence might have been raised and resolved in the first case; and

(3) Both actions involved the same parties or their privies.

*Smith, Hinchman, supra,* 990 F.2d at 257–58 (quoting *Reithmiller v. Blue Cross & Blue Shield of Michigan,* 824 F.2d 510 (6th Cir.1987)).

■ Contrary to Plaintiff's assertions, these elements are met in this case. The state court entered a final judgment and specifically ruled that its decision was "on the merits;" the issue of ERISA jurisdiction was fully argued before the state court by both parties; and the parties in the state court action are identical to the parties currently before this Court.

Plaintiff, however, argues that the state court decision should not be given *res judicata* effect with respect to this action because it contends that the state court did not have subject matter jurisdiction over Plaintiff's ERISA claims to render a ruling. As Plaintiff points out, the three-pronged *res judicata* determination is applied "only if the first court had jurisdiction over the parties and the subject matter of the litigation." *Smith, Hinchman, supra,* 990 F.2d at 258.

■ The Sixth Circuit has adopted the test set forth in the *Restatement of Conflict of Laws* for determining whether a court has subject matter jurisdiction over the matter for purposes of *res judicata.* As summarized by the court in *Smith, Hinchman,* the *Restatement* has propounded a five-part test for this purpose:

Where a court has jurisdiction over the parties and determines that it has jurisdiction over the subject matter, the parties cannot collaterally attack the judgment on the ground that the court did not have jurisdiction over the subject matter, unless the policy underlying the doctrine of res judicata is outweighed by the policy against permitting the court to act beyond its jurisdiction. Among the factors appropriate to be considered in determining that collateral attack should be permitted are that

(a) the lack of jurisdiction over the subject matter was clear;

(b) the determination as to jurisdiction depended upon a question of law rather than of fact;

(c) the court was one of limited and not of general jurisdiction;

(d) the question of jurisdiction was not actually litigated; and

(e) the policy against the court's acting beyond its jurisdiction is strong.

*Smith, Hinchman, supra, quoting Restatement, Conflict of Laws,* § 451(2). *See also, Durfee v. Duke,* 375 U.S. 106, 114 n. 12, 84 S.Ct. 242, 247 n. 12, 11 L.Ed.2d 186 (1963) (quoting in *dicta the Restatement* test with approval).

In the *Smith, Hinchman* case, the defendant, William Tassic, was a long-time employee of Smith, Hinchman and a member of the board of directors of the company. Tassic's relationships with his fellow board members over time became increasingly strained. 990 F.2d at 257. The primary subject of disagreement was the method of valuation of the closely held corporation's stock, which was primarily held by Smith, Hinchman employees and officers through their participation in the company's Employee Stock Option Plan, and the board's decision to discontinue the plan rather than bring it into compliance with the Tax Reform Act of 1986 by ar-

ranging for an outside appraisal of the ESOP assets. *Id.* Tassic was very vocal in his opposition to the board's stock valuation and ESOP plan termination decisions. After the company voted to terminate the plan, the Chairman and CEO of Smith, Hinchman requested his resignation. *Id.*

Following his forced resignation, Tassic brought an action for wrongful discharge in Michigan state court claiming that Smith, Hinchman had breached an implied "just cause" employment contract. The company defended on the grounds that Tassic was an "at will" employee. *Id.* The case proceeded to trial. No preemption defense, however, was raised by the company in the pleadings or at trial. *Id.*

After the jury returned a verdict in Tassic's favor, Smith, Hinchman filed a motion to dismiss for lack of subject matter jurisdiction based upon Tassic's testimony at trial indicating that he was terminated in retaliation for his objections to the administration of an ERISA plan, thereby causing his wrongful termination action to be cognizable under and preempted by Section 510 of ERISA. The state court denied the motion. *Id.*

Smith, Hinchman then filed an action in federal court seeking a declaratory judgment that the jury verdict entered in the state court was void for lack of jurisdiction. The district court found that the issue of ERISA preemption was fully and fairly litigated in the Michigan state court and therefore, dismissed the federal action. The Sixth Circuit affirmed. *Id.*

In affirming the district court's dismissal of the federal complaint on *res judicata* grounds, as indicated above, the Sixth Circuit applied the Michigan law on *res judicata* and the *Restatement of Conflicts* rules regarding subject matter jurisdiction arguments. Applying the Restatement test, the appellate court found that "the lack of subject matter jurisdiction on the

part of the state court is not clear." *Id.* at 258.

In reaching that conclusion, although the court noted that it was clear from the language of 29 U.S.C. § 1132(e)(1) that section 510 claims are within the exclusive jurisdiction of the federal district courts, the court found

[I]t is not clear that the right of a board member to engage in a heated policy dispute over the content of a company pension and welfare plan is covered by section 510. The company has provided no authority to support their contention that such a dispute among policy makers is a matter contemplated by the retaliation provision of the statute. Without such support, there is no reason to believe that termination for that reason clearly brings the claim under section 510.

Certainly, the exercise of jurisdiction by the Michigan court here does not rise to the level of overreaching that was present in *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940), where the Supreme Court first recognized this [lack of subject matter jurisdiction] exception [to claim preclusion]. The Wisconsin Court in *Kalb* foreclosed on property which was part of a res in bankruptcy and therefore within the jurisdiction of the bankruptcy courts. The plenary power of bankruptcy courts over res property had been clearly articulated by Congress. In contrast, ERISA jurisdiction is partly concurrent, partly exclusive and covers certain ancillary matters but not others. There was no blatant disregard of Congressional intent by the Michigan State Court; rather Judge Teranes appears to have made a plausible ruling.

990 F.2d at 258.

Turning to the instant action, Plaintiff here contends that its ERISA claim "falls

under [29 U.S.C. § ] 1132(a)(2) or (a)(3)(B)" and, therefore, is within the exclusive jurisdiction of the federal court. Accordingly, Clayton argues that the Oakland County Circuit Court was without jurisdiction to render a ruling on the merits on Plaintiff's ERISA claims.

ERISA Section 502(e)(1), 29 U.S.C. § 1132(e)(1) provides:

Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs 1(B) and (7) of subsection (a) of this section.

■ The plain language of the statute makes clear that claims under 1132(a)(2) and (a)(3) are within the exclusive jurisdiction of the federal district courts. However, it is not clear that an ERISA benefits employer's dispute with its insurer over the amount of premiums charged is covered by either of these subsections.

29 U.S.C. § 1132(a)(3) provides that

A civil action may be brought—

(3) by a participant, beneficiary, or fiduciary to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Plaintiff is not a "participant" or a "beneficiary" of the Plan. Therefore, it is only if Clayton is found to be a "fiduciary" that Plaintiff may assert a claim under this section.[4]

ERISA takes a "functional approach" in defining a for purposes of the statute "fiduciary."

29 U.S.C. § 1002(21)(A) provides:

Except as otherwise proved in subparagraph (B) [concerning investments in securities] a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect with respect to any moneys or other property of such plan, or has authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. . . .

Under this functional approach, an entity may be a fiduciary for some purposes but not others. *Lockheed Corp. v. Spink*, 517 U.S. 882, 116 S.Ct. 1783, 1789, 135 L.Ed.2d 153 (1996); *Kerns v. Benefit Trust Life Ins. Co.*, 992 F.2d 214, 217 (8th Cir.1993).

Applying this functional approach to Plaintiff's allegations in this case, it is only if Clayton is found to exercise discretionary authority with respect to the setting of insurance premiums that Plaintiff may be deemed to be a "fiduciary." The precise issue in the context of a dispute over insurance premiums was presented to the Seventh Circuit in *Schulist v. Blue Cross of Iowa*, 717 F.2d 1127 (7th Cir.1983). Al-

---

4. The Court notes that Plaintiff here argues that it *is* a fiduciary; however, in the state court, Plaintiff argued that it was *not* a fiduciary. *See* Defendant First Allmerica's Ex. P at 8–11.

though in *Schulist,* the "fiduciary" question arose in the context of a union health and welfare fund's trustees' attempt to sue an insurance company for breach of fiduciary duties based upon alleged overcharges of premiums for health care coverage for its members, the court's resolution of the "fiduciary" question is instructive.

In that case, the court found that Blue Cross was not a fiduciary with respect to the setting of premiums explaining:

> We think that BC/BS does not exercise discretionary authority with respect to the setting of rates. Before entering into the Contract which included the rates alleged to have provided it with unreasonable compensation, BC/BS had no relationship to the Trust at all. . . . BC/BS was selected as medical carrier presumably because its premium rate of $86.15 per month [per participant] was more favorable than [others]. . . . After the Contract was signed, BCBS may have come into a fiduciary relationship to the Trust with respect to the processing of claims, the area over which BC/BS had discretionary authority. . . . As to the terms and conditions upon which it became a provider . . . BC/BS entered into an arm's length bargain presumably governed by competition in the marketplace. . . . Hence, BC/BS did not in these respects incur the obligations of a fiduciary.

*Id.* at 1131–1132.

As in *Schulist,* Plaintiff Clayton here entered into an arms' length agreement when it contracted with First Allmerica to provide group medical insurance coverage for its employee health and welfare plan. This did not entail claim administration, eligibility determination or processing in which duties the Plan documents make clear that Clayton *is* a fiduciary. [*See* Summary Plan Description, Defendants Ex. C, § 14, designating Plaintiff "plan administrator" with discretionary authority over these matters].

Similarly, in *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250 (2nd Cir.1987), the court distinguished a plan administrator's fiduciary status before and after entering into a contract, and affirmed the district court's refusal to instruct the jury that the administrator was an ERISA fiduciary with respect to premium charges. *See also, Srein v. Soft Drink Workers Union, Local 812,* 93 F.3d 1088, 1096 (2nd Cir.1996) (ruling that the reasonableness of premium charges was "not a question that arises under ERISA" because the charges were negotiated between the parties at arms' length.)

Based upon the foregoing, it does not appear that Plaintiff could maintain an action pursuant to Section 1132(a)(3).

■ With respect to Plaintiff's alternative ERISA theory, 29 U.S.C. § 1132(a)(2) provides that

> a civil action may be brought—
>> by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title.

29 U.S.C. § 1109, the section referenced in § 1132(a)(2), deals with a fiduciary's liability for breach of its statutory duties to an ERISA plan. This section provides as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable **to make good to such plan any losses to the plan** resulting from each such breach, **and to restore to such plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary,** and shall be subject to such other equitable or remedial

relief as the court may deem appropriate, including removal of such fiduciary.

Thus, an action may be brought under section 1109 only if there was a loss **to the ERISA plan.** Plaintiff has not pled nor alleged in any of its briefs in either the state court or in this Court that it seeks to recover the $113,304.78 on behalf of its employee health care benefit *plan.* Rather, Clayton has merely alleged that it [i.e., the company] has been damaged in that amount because it had to pay $113,000 more than what it thought it would have to pay for the policy it bought to cover its employees.[5]

The case law confirms the plain language of section 1109. In *McDonald v. Provident Indem. Life Ins. Co.,* 60 F.3d 234, (5th Cir.1995), *cert. denied,* 516 U.S. 1174, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996), a company, McDonald Equipment, subscribed to the Business Insurance Trust ("BIT") to obtain group health insurance for its employees and their dependents. BIT was organized by Arden O. French, Jr., who served as trustee and also owned Insurance Resources Management Corporation, the third party administrator of the group health plan. The BIT plan was underwritten by Provident Indemnity Life Insurance Company.

After the son of the owner of McDonald Equipment suffered a near-fatal swimming accident which rendered the boy a quadriplegic, Provident paid $360,000 in medical claims, but raised McDonald Equipment's premium by 50 percent in April 1990, by 100 percent in November 1990, and by still another 100 percent in April 1991. As a result, McDonald's initial monthly premiums for its employees' group health insurance policy of $2,000 were increased to $15,208. The company could not afford continued coverage and the policy lapsed. 60 F.3d at 235.

McDonald then brought suit against Provident, BIT and French asserting various state law claims, and alternatively invoking ERISA. The district court found that McDonald's state law claims were preempted under ERISA and dismissed the state law claims, then ultimately rendered judgment in favor of all of the defendants on their ERISA claim. *Id.*

McDonald's ERISA theory was one of breach of fiduciary duties under 29 U.S.C. § 1109. The plaintiffs principal argument was that Arden French breached his fiduciary duty by not disclosing Provident's schedule for re-rating of premiums. The Fifth Circuit held that this claim failed because the plaintiffs failed to prove a loss to the plan. The court explained:

> In *Massachusetts Mut. Life Ins. Co. v. Russell,* [473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) ] the Supreme Court interpreted the "loss to the plan" language in § 1109 to limit claims under this section to those which inure to the benefit of the plan as a whole.... The court noted that this interpretation reflected ERISA's primary concern with

---

**5.** The Court further notes that Plaintiff admitted in the state court proceedings that it did not read its policy. *See* Feb. 9, 2000 Opinion and Order in the state court proceedings, Plaintiff's Ex. F, pp. 3–4. As the state court observed, the policy clearly provides that the monthly claim limit is determined from the number of employees as of the beginning of the third preceding month. *Id.* It is undisputed that the $113,304.78 that Plaintiff sought to recover in the state court and seeks to recover here accurately represents the monthly premium due for February 1998 based upon the number of employees on November 1, 1997, i.e., the third month preceding February 1998. *Id.* Plaintiff's claim is not based upon the policy terms; rather, it is based upon erroneous information it received from its insurance agent, Group Perks/Schechter, and Group Perks claims that it received this misinformation from First Allmerica.

the possible misuse or mismanagement of plan assets.

A close examination of the McDonalds' claim does not disclose how it involved the requisite "loss to the plan" as described in *Russell.* The resulting harm of the breach of French's fiduciary duties was the payment of higher premiums which ultimately lead to the decision, albeit under economic duress, to discontinue insurance coverage with the BIT.... Were we to consider the prohibitive increase in premiums as the injury or loss, these increase actually made the plan itself healthier and more likely to survive the catastrophic claims of other beneficiaries, including other McDonald Equipment employees. We must therefore conclude that the McDonalds failed to establish a loss to the plan.

*Id.* at 237–38. *See also, Roth v. Sawyer–Cleator Lumber Co.,* 61 F.3d 599, 602 (holding that section 1109(a) permits recovery only if a fiduciary's breach results in a loss to the plan); *Richards v. General Motors Corp.,* 991 F.2d 1227, 1231 (6th Cir.1993) (holding that no claim was stated under section 1109 where the challenged transaction actually produced a net gain to the plan).

In this case, Plaintiff seeks reimbursement for the overcharge of premiums on its own behalf, not on behalf of the Plan. Indeed, the Summary Plan Description establishes that the Plan incurred no loss by virtue of the alleged overcharge. As set forth in Paragraph 12 of the Summary Plan Description, "The plan sponsor [Clayton Environmental Consultants, Inc.] pays the required premiums to First Allmerica **from its general assets** in accordance with the group insurance policy...." [Defendants Schechter/Group Perks' Ex. E, ¶¶ 2, 12. (emphasis added).] Thus, any loss due to overpayment of premiums appears to

have been incurred only by the employer, not the Plan. Therefore, Plaintiff cannot maintain an ERISA claim under this theory.

■ That Plaintiff could not maintain an ERISA action under either of its theories does not, however, mean that the state court had no jurisdiction to hold that Plaintiff's state court complaint was preempted under ERISA. Defendants raised ERISA preemption as a defense to the state court action. The Sixth Circuit has made clear that state courts are competent to decide the federal preemption defense in such cases. *See Warner v. Ford Motor Co.,* 46 F.3d 531, 535 (6th Cir.1995) (*en banc*); *Zuniga v. Blue Cross and Blue Shield of Michigan,* 52 F.3d 1395, 1399 (6th Cir.1995).

If a plaintiff's claim is not subject to preemption based upon the civil enforcement provisions of Section 1132(a), it may, nonetheless, be preempted under the general ERISA preemption provision, 29 U.S.C. § 1144, which provides that ERISA shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan. In *Warner,* the Sixth Circuit held that

[Section 1144] allows ERISA to preempt state laws when the "relate to" matters governed by ERISA but does not create a federal cause of action for matters which only "relate to" ERISA's field of concern. Thus, § 1144 preemption does not create a federal cause of action itself, and cannot convert a state cause of action into a federal cause of action under the well-pleaded complaint rule. As a consequence, no removal jurisdiction exists under § 1144....

[However], State causes of action not covered by § 1132(a) ... may still be subject to a preemption claim under § 1144(a) ... because the state law at issue may "relate to" a pension or em-

ployee benefit plan. But such causes of action are not subject to removal....

**... The federal preemption defense in such nonremovable cases would be decided in state court.**

46 F.3d at 534–35 (emphasis added). *See also, NGS American, Inc. v. Jefferson,* 218 F.3d 519, 529 (6th Cir.2000) ("On its face, § 1144 does not prohibit filing a state law claim preempted by ERISA in state court.... Moreover, state courts clearly have concurrent jurisdiction over ERISA cases that are not completely preempted.")

Based upon the foregoing, the Court finds that the Oakland County Circuit Court was not without jurisdiction to decide that Plaintiff's state law complaint was preempted under ERISA. Therefore, by application of the Michigan's *res judicata* standards, the Court finds that because (1) both the state action and this action involve the same parties; (2) the state court action was decided on its merits; and (3) the issues raised in the instant action either were resolved in the state court, or through the exercise of reasonable diligence might have been raised and resolved in the first case, Plaintiff's Complaint in this action must be dismissed.

## B. *THE ROOKER–FELDMAN DOCTRINE*

Even if the Court were to find that Plaintiff's claims were not barred by *res judicata,* they would be barred under the *Rooker–Feldman* doctrine.

Under the United States Supreme Court's decisions in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), and their progeny, this Court lacks jurisdiction to entertain Plaintiff's declaratory judgment action.

The Supreme Court's decisions in *Rooker, supra,* and *Feldman, supra,* taken together, stand for the proposition that the inferior federal courts lack the authority to perform, in effect, what would be an appellate review of state court decisions. This now well-settled rule has become known as the *Rooker–Feldman* Doctrine.

In *Rooker,* the plaintiffs brought an action in a federal district court claiming that an Indiana state statute violated their federal constitutional rights, even though the issues which the plaintiffs raised had been decided by an Indiana Circuit Court and affirmed by the Indiana Supreme Court. In affirming the federal district court's dismissal of the action based on lack of jurisdiction, the United States Supreme Court stated that the state courts had jurisdiction to determine the constitutional validity of the state's statutes and, until reversed or modified by a state court, the state judgment would be an effective and conclusive adjudication, even before an inferior federal court. 263 U.S. at 415, 44 S.Ct. 149. In particular, the Court held that the inferior federal courts lacked jurisdiction to entertain a proceeding to reverse or modify a state court judgment since it would be an exercise of appellate jurisdiction and the jurisdiction possessed by the federal district court is strictly original. *Id.* at 414–17, 44 S.Ct. 149.

In *Feldman,* the plaintiff submitted to the District of Columbia Court of Appeals a petition for admission to the bar of the District of Columbia after he had been refused the right to take the bar examination because he had not graduated from an approved law school, as required by the District of Columbia rules. After the District of Columbia Court of Appeals denied the plaintiff's petition, he brought an action in a federal district court alleging that he had a right to take the bar exam pursuant to the Fifth Amendment, and that,

denying him this right, due to his law school's lack of accreditation, was a violation of the Fifth Amendment and the Sherman Act. In finding that the federal district court had no jurisdiction over this matter, the U.S. Supreme Court held that plaintiffs seeking review of state court decisions must first exhaust the appellate review available to them at the state court level and then, they may appeal only to the United States Supreme Court. *Feldman,* 460 U.S. at 486, 103 S.Ct. 1303.

■ Since these decisions, the U.S. Courts of Appeal and the U.S. Supreme Court have stated broadly that when presented with claims that raise issues which were the subject of, or inextricably intertwined with, state court decisions, the inferior federal courts must apply the *Rooker–Feldman* Doctrine and dismiss the claims, **even where the inextricably intertwined issues underlying the claims before it were not raised in state court, or where the time for appeal in the state court system has expired.** *Pennzoil Co. v.. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J. concurring) (emphasis added); *Garry v. Geils,* 82 F.3d 1362, 1369–70 (7th Cir.1996); *Keene Corp. v. Cass,* 908 F.2d 293 (8th Cir.1990); *Worldwide Church of God v. McNair,* 805 F.2d 888 (9th Cir.1986); *Curry v. Baker,* 802 F.2d 1302 (11th Cir.), *cert. dismissed,* 479 U.S. 1023, 107 S.Ct. 1262, 93 L.Ed.2d 819 (1986); *Hale v. Harney,* 786 F.2d 688 (5th Cir.1986); *Blue Cross & Blue Shield of Md. v. Weiner,* 868 F.2d 1550, 1556 (11th Cir.1989). *Anderson v. Charter Township of Ypsilanti,* 266 F.3d 487 (6th Cir.2001). Put simply, claims like these are barred from the inferior federal courts because these courts have no authority to review state court decisions or any issues that either the state court or the parties considered or raised, *or could have,* in the course of the state court decisions. *See,*

*e.g., Garry, supra,* 82 F.3d at 1369–70; *Ritter v. Ross,* 992 F.2d 750, 753 (7th Cir.1993) ("Impermissible appellate review may occur when a district court is asked to entertain a claim that was not even argued in the state court but is [still] 'inextricably intertwined' with the state court judgment." *Id.,* quoting and citing *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303). *See also, Hart v. Comerica,* 957 F.Supp. 958 (E.D.Mich.1997); *Community Treatment Centers, Inc. v. City of Westland,* 970 F.Supp. 1197 (E.D.Mich.1997).

Thus, as the Court discusses below, an inferior federal court must apply the *Rooker–Feldman* Doctrine to dismiss cases for lack of jurisdiction where: (1) the party against whom the Doctrine is being applied had the opportunity to raise the issues before the inferior federal court, or those inextricably intertwined therewith, in prior state court proceedings; and (2) either the prior state court proceedings adjudicated the issues before the inferior federal court, or the issues before the federal court are inextricably intertwined with the issues which were the subject of the state court proceedings.

■ First, the Sixth Circuit has held that to apply the *Rooker–Feldman* Doctrine to bar a federal plaintiff's claim, the court must find that the plaintiff was a "party" to the underlying state court proceedings. *United States v. Owens,* 54 F.3d 271, 274 (6th Cir.1995) (*Rooker–Feldman* does not apply to bar a suit in a federal court brought by a party that was not a party in the preceding action in state court, nor does it bar a party against whom there is no state court judgment). In *Owens,* the Sixth Circuit held that a plaintiff is deemed to be a party for *Rooker–Feldman* purposes where (1) he or she had the opportunity to raise his or her claims in the state court proceedings and (2) where failure to do so would impact

detrimentally on his or her legal rights and interests. *Id.* at 274 (emphasis added). *See also, Hart v. Comerica, supra; Community Treatment Centers, Inc. v. City of Westland, supra.* The alignment or designation of the parties in the state court action is not relevant where the federal plaintiff is essentially "appealing" or attempting to re-litigate issues raised and resolved, or issues which could have been raised and resolved, in the state court.

 There is no dispute that Plaintiff was a party in the state court proceedings and clearly had the opportunity to raise the claims raised in this action in the state court.

While the Court does note that when courts apply the *Rooker–Feldman* Doctrine, typically the plaintiffs are alleging, before the inferior federal court, violations of their federal rights or violations of federal statutes, this is of no legal significance to the applicability of the Doctrine. *See, e.g., Kamilewicz v. Bank of Boston Corp.,* 92 F.3d 506, 509–12 (7th Cir.1996) (applying *Rooker–Feldman* to claims of common law fraud, negligent misrepresentation, attorney malpractice, breach of fiduciary duty, and conversion). *See also, Powell v. Powell,* 80 F.3d 464 (11th Cir.1996).

Thus, the Court finds that *Rooker–Feldman* applies to all issues raised in a federal court—federal causes of action, constitutional rights, state common law issues, or otherwise—which were the subject of, or inextricably intertwined with, prior state court judgments. In particular, the Court concludes that this application is appropriate here because the *Rooker–Feldman* Doctrine itself is about the proper jurisdiction of a federal court in a federalist system that values and recognizes federal-State comity.

Applying the foregoing authorities to the facts of this case, the Court finds that, even if it were to determine that Plaintiff's

claims were not barred by *res judicata,* under the *Rooker–Feldman* Doctrine, it lacks jurisdiction to entertain Plaintiff's Complaint in this action. Plaintiff has been afforded a full opportunity to present the very issues and arguments it raises here before the Oakland County Circuit Court. Plaintiff has appealed the state court decision to the Michigan Court of Appeals. Any decision rendered by that court is appealable to the Michigan Supreme Court and then subject to review by the U.S. Supreme Court.

## CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Complaint be, and hereby is, DISMISSED IN ITS ENTIRETY WITH PREJUDICE.

## JUDGMENT

The Court having this date entered an Opinion and Order granting Defendants' Motions for Summary Judgment and denying Plaintiff's Cross–Motion for Summary Judgment, and dismissing Plaintiff's Complaint in its entirety with prejudice,

NOW, THEREFORE,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that a JUDGMENT OF DISMISSAL with prejudice be and hereby is entered.